IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| MATHEW WHITEST, M.D., SARAH WILLIAMSON, KENYA WILLIAMSON, BETTY JEAN WILLIAMSON, GEORGE WHITEHEAD, JR., CURTIS LUCAS, JR., and CRANDALL POSTELL,<br><br>    Plaintiffs,<br><br>  vs.<br><br>CRISP COUNTY, GEORGIA, BOARD OF EDUCATION; SCOTT FOREHAND, BILL WILSON, LYDIA ADKINS, LELEE PHINNEY, LONNIE NELMS, and CHARLES KERR in their official capacities as members of the Board of Education of Crisp County; CRISP COUNTY, GEORGIA, BOARD OF ELECTIONS AND REGISTRATION; and BECKY PERKINS, in her official capacity as Elections Supervisor of the Crisp County Board of Elections and Registration,<br><br>    Defendants. | Civil Action File No.:<br>1:17-cv-00109-LJA |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT BECKY PERKINS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant Becky Perkins has moved to dismiss Plaintiffs' Amended Complaint against her under Federal Rule of Civil Procedure 12(b)(6) because the requested relief cannot be granted against her.  Br. in Supp. of Second Mot. to

1

Dismiss, Doc. 27-1, p. 3. *See also id.*, p. 6 (because Ms. Perkins "cannot provide any of the relief sought by Plaintiffs, the Amended Complaint against her should be dismissed under Fed. R. Civ. P. 12(b)(6).")  She further contends Plaintiffs "have failed to bring their claim in a timely manner, making it barred by laches." Mot. to Dismiss, Doc. 27, p. 1.  For the reasons stated below, neither of the grounds asserted by Defendant has merit and accordingly her motion to dismiss should be denied.

    I. <u>Ms. Perkins Is a Proper Party</u>

The following facts are conceded by Ms. Perkins and are not in dispute: (1) "In Crisp County, the Board of Elections and Registration is the Election Superintendent[,]" Doc. 27-1, p. 3; (2) The Election Superintendent has the authority to "call or hold the elections in Crisp County," *Id.;* O.C.G.A § 21-2-40; (3) The Board is a "correct defendant" in this action and can grant the relief Plaintiffs seek, Defendant's Brief In Support of First Motion to Dismiss, Doc. 18-1, p. 6; (4) Ms. Perkins is "the Elections Supervisor" of the Board and "is the Board's employee." Doc. 27-1, p. 3; (5) the Election Supervisor can "generally supervise, direct, and control the administration of the affairs of the board pursuant to law and duly adopted resolutions of the board." *Id.*, p. 5.

As is apparent from the above undisputed facts set out above, Ms. Perkins,

as the Elections Supervisor and an employee of the Board, could provide or implement the relief sought by Plaintiffs and ordered by the Court. She is thus a proper party and should not be dismissed from this case. In addition, since the Board is the Election Superintendent and has the authority to "call or hold the elections in Crisp County," Doc. 27-1, p. 3; O.C.G.A § 21-2-40, it can direct the Elections Supervisor to provide any of the relief sought by Plaintiffs and ordered by this Court. Ms. Perkins is thus a proper party and her motion to dismiss should be denied.

In *Navajo Nation Human Rights Commission v. San Juan County*, 2017 WL 3972481 (D. Utah, Sept. 7, 2017), a case challenging San Juan County's election procedures as violating the Voting Rights Act and the Fourteenth Amendment, one of the defendants, Rebecca Benally, made the same argument as the one made by Ms. Perkins in this case. Benally argued that she should be dismissed from the litigation because "her position as County Commissioner does not provide any legal 'right, power, or authority' to alter voting procedures that are determined and overseen exclusively by the County Clerk," and that "she has no authority to bring the County into compliance with Section 2 should the court eventually mandate alterations to the voting procedures." *Id.*, at *23. In rejecting this argument, and concluding that Benally was a proper party, the court held that she, as a County

official, would be required "to comply with any injunction issued by the court." *Id.*, at \*24.  The court further held that "whether or not Defendant Benally has legal authority to alter certain voting procedures is beside the point.  Because she is being sued in her official capacity, she is only being sued as an agent of the County itself."  *Id.*  Similarly, Ms. Perkins is a proper party because she is only being sued in her official capacity as an agent of Crisp County and she would be required to comply with any injunction issued by the court.

The court in *Navajo Nation Human Rights Commission* also held that a "suit against a government official in h[er] official capacity 'generally represents merely another way of pleading the action against the entity of which the official is an agent.'"  *Id.*, at \*23 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Similarly, this suit against Ms. Perkins in her official capacity is merely another way of pleading the action against the Board of Elections and Registration of which she is an employee and an agent.

*Navajo Nation Human Rights Commission* further held that requiring dismissal of Benally would require dismissal of other similarly situated defendants as well.  The court concluded: "There is simply no authority *requiring* dismissal of an allegedly redundant official capacity claim."  *Id.*, at \*23.  *Accord Capresecco v. Jenkintown Borough*, 261 F.Supp. 2d 319, 322 (E.D. Pa. 2003) (finding that

redundancy alone "is not a persuasive basis for dismissal under Rule 12(b)(6)"). Thus, the mere fact that Ms. Perkins may be a redundant official does not justify her dismissal from this litigation.

Ms. Perkins also claims she should be dismissed because she "is not the Superintendent of the Board of Elections and Registration." Doc. 27-1, p. 6. But as noted above, under Georgia law the Election Supervisor can "generally supervise, direct, and control the administration of the affairs of the board pursuant to law and duly adopted resolutions of the board." *Id.*, p. 5. Thus, under Georgia law it is clear that the Superintendent of the Board, and by extension Ms. Perkins, who is an employee of the Board, has a role to play in the implementation of voting procedures and is a proper party Defendant in this litigation.

Notably, in voting cases government officials have been routinely sued in their official capacities, as well as the relevant governmental entities, and none of the cases have required or suggested that the official capacity suits be dismissed. *See, e.g., N.A.A.C.P. v. Hampton Cty. Election Comm'n*, 470 U.S. 166, 173 (1985) (suit to enforce Section 5 of the Voting Rights Act in which the defendants consisted of the county election commission, two school districts, and "various county officials"); *United States v. Jones*, 57 F.3d 1020, 1022 n.1 (11th Cir. 1995) (challenge to the results of an election under Section 2 of the Voting Rights Act in

which defendants included the county commission and its members, the board of registrars and its members, the probate judge, the sheriff, the circuit court clerk, and chief inspector, all of whom were sued in their official capacities); *Stabler v. Cty. of Thurston, Neb.*, 129 F.3d 1015 (8th Cir. 1997) (Section 2 challenge to districting plans in which defendants included the county and the chair of the board of supervisors and the county clerk in their official capacities); *Large v. Fremont Cty., Wyo.*, 709 F. Supp. 2d 1176, 1182 (D. Wyo. 2010) (challenge to at-large elections in which defendants were the county and members of the county commission and the clerk of court in their official capacities); *Blackmoon v. Charles Mix Cty.*, 2005 WL 2738954 (D.S.D. Oct. 24, 2005) (challenge to at-large elections in which the defendants were the county commissioners and the county auditor in their official capacities). Ms. Perkins cites no cases to support her claim that she should be dismissed as a party, and that is because there are none.

II.  Defendant's Laches Argument Is Without Merit

Defendant contends that "Plaintiffs sat on the rights they now claim, and laches should bar their Amended Complaint." Doc. 27-1, at 6. But to bar Plaintiffs from bringing this action to enforce their voting rights would be in direct violation of the fundamental purpose of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, which is to protect the equal right of minorities "to participate in

the political process and to elect representatives of their choice." The argument that at some point in time the right to protect voting rights is barred by laches is utterly irrational and would amount to an unconstitutional repeal of Section 2. And as the Senate Committee concluded, "'voting practices and procedures that have discriminatory results perpetuate the effects of past purposeful discrimination.'" *Thurburg v. Gingles*, 478 U.S. 30, 44 n.9 (1986) (quoting U.S. Code Cong. & Admin. News 1982, p. 218). Plaintiffs thus have a right to challenge the effects of discrimination whenever they occur. The Senate Report also notes that the purpose of the Voting Rights Act was "'not only to correct an active history of discrimination, the denying to Negroes of the right to register and vote, but also to deal with the accumulation of discrimination.'" *Id.*, p. 182. To bar a challenge to the accumulation of discrimination resulting from a voting practice because of laches as Defendant argues would be in direct violation of the Voting Rights Act.

Defendant's suggestion that Plaintiffs were not diligent is without basis. Defendant now agrees that suits brought under Section 2 of the Voting Rights Act also require a substantial amount of time consuming pre-litigation research and expert analysis. In *Gingles*, 478 U.S. at 50, the Court held that as an initial matter a plaintiff would have to establish three "preconditions for multimember districts to operate to impair minority voters' ability to elect representatives of their

choice." Those preconditions are: "First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district." *Id.*, at 50. To satisfy this precondition, plaintiffs must hire a demographer to draw plans demonstrating that the minority group is in fact geographically compact. This can be both expensive and time consuming. Second, "the minority group must be able to show that it is politically cohesive," or votes as a group. *Id.*, at 51. This requires hiring another expert, a statistician who can do a racial bloc voting analysis, and it can also be expensive and time consuming. Third, "the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Id.* Again, this can be an expensive and time consuming process. But this is not the end of the process of determining a possible Section 2 violation. The Senate Report lists nine factors, known as the "totality of the circumstances," some of which Plaintiffs need to prove to establish a Section 2 violation. They include: "any history of official discrimination in the state or political subdivision," which might require the hiring of an expert historian and can be time consuming; "the extent to which members of the minority group bear the effects of discrimination in such areas as education, employment and health," which might require the hiring of an expert social scientist and can be time

consuming; "whether political campaigns have been characterized by overt or subtle racial appeals," which might require the hiring of a political scientist and can be time consuming; and "the policy underlying the state or political subdivision's use of" a voting practice. *Id.*, at 36-37. Defendants' contention that "Plaintiffs sat on the rights they now claim," Doc. 27-1, p, 6, totally ignores the time necessarily spent in preparing to file a Section 2 claim. And by definition, a challenge to a discriminatory voting practice is necessarily timely when it is filed.

Defendant again relies on *White v. Daniel*, 909 F.2d 99 (4th Cir. 1990), but their reliance is still misplaced. There the court held a plaintiff's claims are untimely under the doctrine of laches "when judicial relief makes no sense." *Id.*, p. 104. In applying laches the court concluded that:

> A court-ordered reapportionment at this date would be completely gratuitous, because there are no elections scheduled before November 1991 and the 1990 census figures may require reapportionment. It makes far more sense to await the 1990 census figures and the 1991 reapportionment (if required) than for a court to intervene at such a late hour.

*Id.* Here, by contrast, elections in Crisp County for the Board of Education are scheduled in 2018 *and* 2020, both *before* the 2020 census is available.[1] It would

---

[1] The 2020 census counts would not be released for redistricting until 2021. *See* U.S. Census Bureau, 2020 Census Operational Plan 9 (Sept. 2016), *available at* https://www2.census.gov/programs-surveys/decennial/2020/program-management/planning-docs/2020-oper-plan2.pdf.

make complete sense, and should be required, to hold those elections under a plan that complies with the Voting Rights Act.  *See Blackmoon v. Charles Mix Cty.*, 386 F.Supp.2d 1108, 1115 (D.S.D. 2005) (holding that Defendants were not entitled to summary judgment on their laches defense where plaintiffs' challenge was to future elections held under a plan that was unconstitutional and violated the Voting Rights Act).  Defendant now adds that it is allegedly inappropriate to enter relief in advance of a 2018 election when qualifying for those seats is less than six months away, but those kinds of arguments are better left for the remedial phase of litigation.

Defendant Perkins again claims that all the Defendants "are prejudiced by the delay and a call for a new plan at this late date in the decade." Doc. 27-1, at 7.  But it is again unclear how Defendant Perkins is able to speak for all the other Defendants who have not moved to dismiss on this basis or claimed prejudice.  In any event, her assertion of prejudice remains conclusory and does not specifically identify how this lawsuit has impaired her ability to defend herself in this case.  Furthermore, it is the minority Plaintiffs who will be prejudiced if elections are held in both 2018 and 2020 under a racially discriminatory plan that violates Section 2 of the Voting Rights Act.

Defendant further contends that a new plan drawn for the Board of

Education would not provide "fair and accurate representation to the citizens of the County."  Doc. 27-1, p. 7.  But that is precisely the problem with the existing plan; it does not provide fair and accurate representation to the minority citizens of Crisp County.  Section 2 requires that a fair and accurate plan be implemented for the elections in 2018 and 2020.  There is no basis for Defendant's claim that Plaintiffs' complaint should be dismissed under the doctrine of laches.

## Conclusion

Defendant's motion to dismiss is without merit and should be denied.

Dated this 4th day of October, 2017.

<div style="text-align:right">

Respectfully submitted,

/s/ M. Laughlin McDonald
M. LAUGHLIN McDONALD (Ga. Bar No. 489550)
American Civil Liberties Union
 Foundation, Inc.
2700 International Tower
229 Peachtree Street
Atlanta, Georgia  30303
(404) 500-1235
Email: Lmcdonald@aclu.org

Bryan L. Sells (Ga. Bar No. 635562)
The Law Office of Bryan Sells, LLC
P.O. Box 5493
Atlanta, Georgia 31107
(404) 480-4212
Email: bryan@bryansellslaw.com

</div>

11

<div style="margin-left: 40%;">

Sean J. Young (Ga. Bar No. 790399)
Aklima Khondoker (Ga. Bar No. 410345)
American Civil Liberties Union of Georgia
P.O. Box 77208
Atlanta, Georgia 33057
(770) 303-8111
Email: syoung@acluga.org
Email: akhondoker@acluga.org

ATTORNEYS FOR PLAINTIFFS

</div>

## CERTIFICATE OF SERVICE

This is to certify that the foregoing will be served on Defendants via the ECF System.

Date: October 4, 2017

/s/ M. Laughlin McDonald
M. LAUGHLIN McDONALD (Ga. Bar No. 489550)
American Civil Liberties Union
 Foundation, Inc.
2700 International Tower
229 Peachtree Street
Atlanta, Georgia  30303
(404) 500-1235
Email: Lmcdonald@aclu.org