# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

MATHEW WHITEST, *et al.*,                    :
                                             :
      Plaintiffs,                          :
                                             :
v.                                           :      CASE NO.: 1:17-CV-109 (LAG)
                                             :
CRISP COUNTY, GEORGIA BOARD                  :
OF EDUCATION, *et al.*,                      :
                                             :
      Defendants.                          :
_____          :

## ORDER

Before the Court is Plaintiff Crandall O. Postell's *pro se* Motion to Drop Plaintiffs Mathew Whitest and Curtis Lucas Jr. and Motion to Disqualify Bryan Sells, Laughlin McDonald, Aklima Khondoker, Sean J. Young, and American Civil Liberties Union (ACLU) of Georgia (Motion) (Doc. 66).[1] For the reasons provided below, the Motion is **DENIED**.

## BACKGROUND

On June 14, 2017, Plaintiffs Mathew Whitest, Curtis Lucas Jr., Crandall Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr. (collectively Plaintiffs) instituted this action challenging Defendant Crisp County, Georgia's Board of Education's (BOE) at-large election method as a violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. (Doc. 1.) Plaintiffs were represented by Bryan L. Sells of the Law Office of Bryan L. Sells LLC and Laughlin McDonald, Aklima Khondoker, and Sean J. Young of the ACLU (collectively ACLU). On February 16, 2018, the Parties filed a consent motion to refer the case to mediation, which the Court granted in part and denied in part.[2] (Docs. 44–45.) The Parties engaged in mediation at JAMS Atlanta Resolution Center on May 7, 2018. (Doc. 54 at 7.) Three of the Plaintiffs attended the mediation: Mathew Whitest, Curtis

---

[1]     On February 28 and March 3, 2020, Mr. McDonald and Ms. Khondoker withdrew their representation of Mr. Whitest and Mr. Lucas, as neither are currently employed by the ACLU. (Docs. 86, 88.)

[2]     The Court denied the Parties' request to refer this matter to mediation before the Magistrate Judge of this Court but encouraged the Parties to engage in private mediation services. (Doc. 45 at 1–2.)

Lucas Jr., and Crandall Postell. (Doc. 47 at 1.) Plaintiffs Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr. were unable to attend and, with written permission, were represented by Plaintiff Postell. (*Id.*) Pursuant to the Court's March 6, 2018 Order, the ACLU filed a Joint Status Report on the May 7, 2018 mediation. (*Id.*) Therein, the ACLU represented that the Plaintiffs were at odds about how to proceed and had reached an impasse. (*Id.* at 2–3.)

On May 24, 2018, the ACLU filed a Motion to Withdraw their representation of Plaintiffs Crandall Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr. (collectively Postell Plaintiffs), but sought to continue representing Plaintiffs Whitest and Lucas. (Doc. 48.) The Postell Plaintiffs, proceeding *pro se,* jointly objected and, in their response, sought to have the ACLU disqualified from continuing to represent Plaintiffs Whitest and Lucas. (Doc. 51.) The Court granted the ACLU's Motion to Withdraw on May 16, 2019, but declined to address the issue of disqualification, as the issue had not been properly briefed. (Docs. 64.) Accordingly, the Court gave the Postell Plaintiffs leave to file a motion to disqualify within twenty-one days of the Order. (*Id.* at 6.)

On June 6, 2019, Plaintiff Postell filed the instant Motion seeking to drop Plaintiffs Whitest and Lucas from the action and disqualify the ACLU from representing Plaintiffs Whitest and Lucas. (Doc. 66.) Plaintiffs Whitest and Lucas responded on June 25, 2019. (Doc. 69.) No reply was filed. Thus, the Motion is now ripe for review. M.D. Ga. L.R. 7.3.1(A).

## DISCUSSION

### I.    Rule 21 Misjoinder

Plaintiff Postell first seeks to drop Co-Plaintiffs Whitest and Lucas pursuant to Federal Rule of Civil Procedure 21. (Doc. 66 at 2.) Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." A party is properly joined if they are joined pursuant to Rule 19 or 20. Under Rule 19(a)(1), a party is indispensable and must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect

the interest; or (ii) leave an existing party subject to a substantial
risk of incurring double, multiple, or otherwise inconsistent
obligations because of the interest.

Rule 20(a)(1) permits a party may be joined if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Ultimately, whether to drop or add a party under Rule 21 "is left to the sound discretion of the trial court." *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1045 (11th Cir. 1986).

Here, Plaintiffs Whitest and Lucas are not misjoined. Plaintiffs Whitest and Lucas, along with the other Plaintiffs, jointly challenge the Crisp County BOE's at-large voting system as a violation of Section 2 of the Voting Rights Act. (Doc. 24 ¶¶ 1–3.) There also are questions of law and fact common to all Plaintiffs, including whether African Americans are sufficiently numerous and geographically compact enough to constitute a majority in one or more potential single-member districts, whether the at-large voting system dilutes the voting strength of African American voters in Crisp County, and whether that system effectively denies or abridge the equal rights of African American voters to participate in the political process. Plaintiffs, therefore, are properly joined under Rule 20(a), and there is no basis to drop them for misjoinder.

Plaintiff Postell, however, argues that Plaintiffs Whitest and Lucas should be dropped from this action because they allegedly breached the Plaintiffs' Engagement Agreement and "change[d] sides" by supporting a settlement of this action. (Doc. 66 at 2.) A court's ability to drop a party pursuant to Rule 21 is not limited to just misjoined parties. *See* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1682 (3d ed. 1998) ("The application of Rule 21 has not been limited to cases in which parties were erroneously omitted from the action or technically misjoined contrary to one of the party joinder provisions in the federal rules."). The Court may at any time add or drop a party on "just terms." Fed. R. Civ. P. 21. In determining whether to drop or sever a party from an action, the Court considers several factors:

(1) whether the claims arise out of the same transaction or

> occurrence; (2) whether the claims present some common
> questions of law or fact; (3) whether settlement of the claims or
> judicial economy would be facilitated; (4) whether prejudice
> would be avoided if severance were granted; and (5) whether
> different witnesses and documentary evidence are required for
> the separate claims.

*Secs. & Exch. Comm'n v. Martin*, 2018 WL 3827206, at *3 (M.D. Fla. Feb. 15, 2018) (collecting cases).

Severance is not appropriate here. As stated above, Plaintiffs' claims arise out of the same transaction or occurrence and involve common questions of law and fact. Because Plaintiffs' claims are asserted jointly and involve the same harm, they will undoubtedly encompass the same witnesses and documentary evidence. If Plaintiffs or their claims were severed, Defendants would be unfairly prejudiced by having to defend against the same claims in separate actions. Judicial economy also favors keeping Plaintiffs and their claims together. Plaintiffs jointly seek declaratory and injunctive relief, potentially including a Court-ordered redistricting plan. Any relief the Court might fashion would therefore benefit from being rendered in consideration of all the Plaintiffs' objections and would avoid potentially inconsistent outcomes. Moreover, keeping Plaintiffs and their claims together avoids any potential prejudice Defendants may suffer from such inconsistent judgments. Thus, there are no grounds to drop or sever Plaintiffs Whitest and Lucas from this action.

## II. Disqualification

Plaintiff Postell alternatively seeks to disqualify the ACLU from continuing to represent Plaintiffs Whitest and Lucas. (Doc. 66 at 4.) In this Circuit, "motions to disqualify are viewed with disfavor as an extraordinary remedy that should not be granted unless absolutely necessary." *Fenik v. One Water Place*, 2007 WL 527997, at *4 (N.D. Fla. Feb. 14, 2007). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). "One compelling reason to deny a client counsel of its choice is counsel's violation of an applicable rule of professional conduct." *S. Visions, LLP v. Red Diamond, Inc.*, 370 F. Supp. 3d 1314, 1322 (N.D. Ala. 2019); *see also Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). "[W]here the district court's disqualification order is based on an allegation of ethical

violation," the Court "must clearly identify a specific Rule of Professional Conduct" and "must conclude that the attorney violated that rule." *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997).

Motions to disqualify in this district are governed by two sources of authority: (1) "the Georgia Rules of Professional Conduct, contained in the Rules and Regulations of the State Bar of Georgia, and judicial decisions interpreting those rules and standards" and (2) "federal common law and the American Bar Association Model Rules of Professional Conduct to the extent that they are not inconsistent with the Georgia Rules." *Adkins v. Hosp. Auth. of Houston Cty.*, 2009 WL 3428788, at *7 (M.D. Ga. Oct. 20, 2009), *aff'd sub nom. McGriff v. Christie*, 477 F. App'x 673 (11th Cir. 2012); *see also Herrmann*, 199 F. App'x at 752 ("Motions to disqualify are governed by two sources of authority," including "the local rules of the court in which they appear" and "federal common law."). "In Georgia, it is always presumed that members of the State Bar have complied with the relevant ethical directory and disciplinary rules in the absence of contrary evidence." *Adkins*, 2009 WL 3428788, at *7 (citing *Gene Thompson Lumber Co., Inc. v. Davis Parmer Lumber Co., Inc.*, 377 S.E.2d 15, 17 (Ga. Ct. App. 1988)). "The party bringing a motion to disqualify bears the burden of proving the grounds for disqualification." *Thornton v. Hosp. Mgmt. Assocs., Inc.*, 787 F. App'x 634, 637 (11th Cir. 2019).

The Eleventh Circuit has cautioned, however, that "[d]isqualification is a harsh sanction, often working substantial hardship on the client" and "should be resorted to sparingly . . . ." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982). "A party's right to his choice of counsel is an important interest which requires that [the] Court approach any motion to disqualify counsel with great caution." *Adkins*, 2009 WL 3428788, at *6 (citing *Herrmann*, 199 F. App'x at 752). Decisions to disqualify involve competing interests that must be balanced, including "the need to maintain the integrity of the legal community and the legal process," prejudice to current and former clients, and "an attorney's right to practice his profession." *Id.* "Even when made in good faith, motions to disqualify opposing counsel inevitably cause delay." *Sanchez v. Am. Strategic Ins. Corp.*, 2016 WL 9455014, at *2 (N.D. Ga. June 20, 2016) (internal quotation marks and citation omitted). Moreover, "motions to disqualify often inconvenience otherwise innocent clients and cause significant expense

associated with finding new counsel and getting counsel up to speed." *City of Jacksonville v. Mun. Elec. Auth. of Ga.*, 2019 WL 7819485, at *3 (N.D. Ga. Nov. 7, 2019). Accordingly, motions to disqualify "should not be granted unless absolutely necessary." *Fenik*, 2007 WL 527997, at *4.

Plaintiff Postell argues that, without his consent, the ACLU's continued representation of Plaintiffs Whitest and Lucas violates Georgia Rules of Professional Conduct 1.7(a) and 1.9. (Doc. 66 at 3.) Georgia Rule of Professional Conduct 1.7(a) provides: "A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client," unless client consent is possible and each affected client or former client gives informed consent, confirmed in writing. When an attorney withdraws from representation of co-parties to an action after an action has been initiated, "whether the lawyer may continue to represent any of the clients is determined by Rule 1.9." Ga. R. Prof. Conduct 1.7, cmt. 3.

"Rule 1.9(a) extends the protections of Rule 1.7 to former clients and prevents switching sides in the same or a related matter." *In re Cabe & Cato, Inc.*, 524 B.R. 870, 881 (Bankr. N.D. Ga. 2014). Under Rule 1.9(a),

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

For an attorney to be disqualified under Rule 1.9(a), the moving party must therefore establish that:

> (1) the moving party and opposing counsel had a prior attorney-client relationship; (2) the present matter is substantially related to the matter in which counsel previously represented the moving party; (3) the interests of the moving party and opposing counsel's current clients are materially adverse; and (4) the moving party does not consent.

*In re Cabe & Cato, Inc.*, 524 B.R. at 882. The ACLU does not dispute that it had a prior attorney-client relationship with the Postell Plaintiffs, that this is the same matter, and that none of the Postell Plaintiffs have consented to their continued representation of Plaintiffs Whitest and

Lucas. (Doc. 69 at 4.) Rather, the ACLU argues that Plaintiffs Whitest and Lucas's interests are not "materially adverse" to the Postell Plaintiffs' interests. (*Id.*)

Plaintiffs Whitest and Lucas's interests are not materially adverse to the Postell Plaintiffs' interests. Generally, parties' interests are materially adverse when "the attorney's participation in the second matter can be regarded as 'changing sides' from his position in the first." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 2006 WL 8446247, at *3 (N.D. Ga. Dec. 28, 2006); *see, e.g.*, *Brooks v. Quinlan*, 839 S.E.2d 51, 55 (Ga. Ct. App. 2020) (finding parties interests materially adverse where attorney represented firm being sued by former client). Despite Plaintiff Postell's characterization to the contrary, neither Plaintiffs Whitest and Lucas nor the ACLU have effectively changed sides, and Plaintiffs' interests remain aligned. Both the Postell Plaintiffs and Plaintiffs Whitest and Lucas all assert the same right to relief—namely, a violation of Section 2 of the Voting Rights Act—and seek the same remedy—declaratory and injunctive relief. None of the Plaintiffs assert claims for monetary damages arising from individualized harms, which could potentially place the Plaintiffs at odds. *See generally W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 737 F. App'x 457, 464 (11th Cir. 2018) (per curiam) (explaining that where plaintiff class seeks only injunctive relief the plaintiffs' interests tend to be more aligned). The ACLU undeniably has confidential information about the Postell Plaintiffs. *See Shattles v. Bioprogress PLC*, 2006 WL 5778889, at *2 (N.D. Ga. July 14, 2006) ("When an attorney actually represents a party, the attorney is charged with a virtually unrebuttable presumption that he/she has received confidential information from the [party]."). The Postell Plaintiffs, however, will not be adversely affected by the ACLU's knowledge of that information, as it is unlikely that any of the Plaintiffs would be subject to cross-examination by their former counsel. *See Adkins*, 2009 WL 3428788, at *11 (finding former client would be "adversely affected if information she previously disclosed to Counsel in confidence is used to impeach or undermine her testimony at trial.").

Plaintiff Postell, however, argues that the Plaintiffs' interests are not aligned because Plaintiffs Whitest and Lucas previously favored settling this action. (Doc. 66 at 4.) First, this action has not presently settled, and it is unclear whether any previously proposed settlement agreement would continue to be possible given the unrepresented Plaintiffs' objections to it.

Thus, whether this action can be resolved by settlement—and whether any conflict exists—is speculative at this moment. Second, Plaintiffs Whitest and Lucas's desire to settle this action does not render their interests materially adverse to the Postell Plaintiffs. Any settlement will not result in any monetary compensation for Plaintiffs, as only declaratory and injunctive relief is sought. Moreover, should Plaintiffs Whitest and Lucas reach a settlement with Defendants, that settlement would only bind Plaintiffs Whitest and Lucas and would not inhibit the other Plaintiffs' ability to continue to pursue their claims. Thus, Plaintiffs' interests are not materially adverse. Accordingly, there is no basis to disqualify the ACLU.

Even assuming that the prospect of settlement made the Plaintiffs' interests materially adverse, it does not inherently follow that the ACLU must be disqualified. Instructive on this point is the factually analogous situation of class action settlements. In class action settlements where subclasses of plaintiffs disagree about the settlement agreement, courts have generally utilized a balancing approach to determine whether class counsel may continue to represent one of the subclasses or whether they must be disqualified from the entire action. *See, e.g.*, *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 590 (3d Cir. 1999) ("[I]n the class action context, once some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class, as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel."); *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 19 (2d Cir. 1986) ("A motion to disqualify an attorney who has represented the entire class and who has thereafter been retained by a faction of the class to represent its interests in opposition to a proposed settlement of the action cannot be automatically granted. Rather, there must be a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute.").

Thus, even assuming Plaintiffs' interests were materially adverse, before granting a motion to disqualify, the Court would have to balance the interests of the "various groups of class members," the public, and the Court "in achieving a just and expeditious resolution of the dispute." *In re Agent Orange*, 800 F.2d at 19. In doing so, the Court may consider: "the

8

amount and nature of the information that has been proffered to the attorney, its availability elsewhere, its importance to the question at issue, such as settlement, as well as actual prejudice that may flow from that information." *Id.* The Court also may consider

> the costs to the class members of requiring that they obtain new counsel, taking into account such factors as the nature and value of the claim they are presenting, the ease with which they could obtain new counsel, the factual and legal complexity of the litigation, and the time that would be needed for new counsel to familiarize himself with all that has gone before.

*Id.*

Here, the interests weigh against disqualification. Plaintiff Postell does not argue that the ACLU has any information that would be prejudicial to him or the other unrepresented Plaintiffs. But, as explained above, any confidential information that the ACLU may have about the Postell Plaintiffs would not be prejudicial to them since the Plaintiffs remain aligned in this matter. On the other hand, Plaintiffs Whitest and Lucas would be severely prejudiced by disqualifying the ACLU. The ACLU represents Plaintiffs Whitest and Lucas at no cost. If disqualified, Plaintiffs Whitest and Lucas would be required to seek new counsel, which would be time consuming and costly. Seeking new counsel would also be difficult given that this case has been pending for three years, making it difficult for new counsel to get caught up. Moreover, few attorneys may be willing to take the representation given the extensive disagreement between Plaintiffs. Accordingly, conscious of the Eleventh Circuit's caution that "[d]isqualification is a harsh sanction" that "should be resorted to sparingly," *Norton*, 689 F.2d at 941 n.4, the Court finds no basis to disqualify the ACLU.

## CONCLUSION

For the reasons provided above, Plaintiff Postell's Motion (Doc. 66) is **DENIED**.

**SO ORDERED**, this 19th day of August, 2020.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**