IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| MATHEW WHITEST, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.: 1:17-CV-109 (LAG) |
| | : | |
| CRISP COUNTY, GEORGIA BOARD OF EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ORDER**

Before the Court is Defendant Becky Perkins' Motion to Dismiss Plaintiffs' Amended Complaint (Motion) (Doc. 27). For the reasons provided below, the Motion is **GRANTED in part and DENIED in part**.

**PROCEDURAL BACKGROUND**

On June 14, 2017, Plaintiffs Mathew Whitest, Curtis Lucas Jr., Crandall Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr. (collectively Plaintiffs) instituted this action challenging Defendant Crisp County, Georgia's Board of Education's (BOE) at-large election method as a violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. (Doc. 1.) Plaintiffs originally named as Defendants: the Crisp County BOE; BOE members Scott Forehand, Bill Wilson, Lydia Adkins, Lelee Phinney, Lonnie Nelms, and Charles Kerr, in their official capacities; and Becky Perkins, in her official capacity as Elections Supervisor of the Crisp County Board of Elections and Registration. (*Id.*) Plaintiffs filed an Amended Complaint on August 30, 2017, adding, *inter alia*, the Crisp County Board of Elections and Registration as a named Defendant. (Doc. 24.) Defendant Perkins filed the instant Motion on September 13, 2017. (Doc. 27.) Plaintiffs responded on October 4, 2017, and Defendant Perkins replied on October 18, 2017. (Docs. 31, 35.) Accordingly, the Motion is fully briefed and ripe for review. M.D. Ga. L.R. 7.3.1(A).

While the Motion was pending, the Parties moved to stay the action to allow them to

engage in settlement discussions. (Doc. 34.) On October 20, 2017, the Court stayed the action for forty-five days. (Doc. 37.) Upon the Parties' requests, the Court extended the stay two more times to February 16, 2018. (Docs. 39, 41–43.) On February 16, 2018, the Parties filed a consent motion to refer this case to mediation and extend the stay of proceedings pending the outcome of mediation, which the Court granted in part and denied in part.[1] (Docs. 44–45.) The Parties engaged in mediation at JAMS Atlanta Resolution Center on May 7, 2018. (Doc. 54 at 7.) Pursuant to the Court's March 6, 2018 Order, the Parties filed a Joint Status Report on the May 7, 2018 mediation, representing that the Plaintiffs were at odds about how to proceed and had reached an impasse. (Doc. 47 at 2–3.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the complaint alleges enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Although a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs," it is not required "to accept the labels and legal conclusions in the complaint as true." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). At bottom, "the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Edwards*, 602 F.3d at 1291 (punctuation omitted). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678–79.

---

[1]   The Court denied the Parties' request to refer this matter to mediation before the Magistrate Judge of this Court but encouraged the Parties to engage in private mediation services. (Doc. 45 at 1–2.)

## FACTUAL ALLEGATIONS

Plaintiffs are African American registered voters and residents of Crisp County. (Doc. 24 ¶ 6.) Plaintiffs allege that African Americans in Crisp County historically have been subject to discrimination in education, housing, employment, health services, and relevant here, exercising their right to vote and participating in the political process. (*Id.* ¶¶ 19–20.) Plaintiffs specifically take issue with the election of members to the Crisp County BOE, which they allege discourages African Americans from running for office, denies them the opportunity to participate equally in the political process, and prevents them from electing the candidates of their choice to the BOE. (*Id.* ¶¶ 22–23.)

The Crisp County BOE consists of six members who are each elected at-large by the entire county. (*Id.* ¶ 13.) Members' terms are six years and are staggered, with an election for each seat held in the general election immediately preceding the expiration of the member's term of office. (*Id.*) Based on the 2010 Census data, the total population of Crisp County is 23,439 people. (*Id.* ¶ 12.) African Americans constitute 43% of that population. (*Id.*) Plaintiffs allege that, as of 2016, there were 10,262 active registered voters in Crisp County, of whom 40.3% were African American. (*Id.*) Plaintiffs further allege that African Americans in Crisp County have common socio-economic characteristics and a common history and heritage. (*Id.* ¶ 17.) African Americans in Crisp County are also "sufficiently numerous and geographically compact" enough to constitute a majority in one or more single-member districts for the BOE elections. (*Id.* ¶ 14.) Plaintiffs further allege that African Americans in Crisp County are "politically cohesive," have organized for collective political activity, and tend to vote as a bloc. (*Id.* ¶¶ 15–16.)

Because, however, voting in BOE elections is "racially polarized," the preferred candidates of African Americans in Crisp County are usually defeated by the white majority voting as a bloc. (*Id.* ¶¶ 18, 21.) Thus, Plaintiffs allege that the current BOE at-large election process denies or abridges their rights and the rights of similarly situated African Americans to participate in the political process and elect representatives of their choice on the basis of race or color in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. (*Id.* ¶¶ 25, 28–29.) Plaintiffs seek declaratory and injunctive relief as well as attorney's fees pursuant to

3

52 U.S.C. § 10301(e) and 42 U.S.C. § 1988. (*Id.* ¶ 28.)

## DISCUSSION

### I.     Claims Against Defendant Perkins

Defendant Perkins argues Plaintiffs' claims against her in her official capacity are redundant of their claims against the Board of Elections and Registration.[2] (Doc. 27-1 at 3–6; Doc. 35 at 2–3.) A claim against a municipal officer in their official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . ." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, where a plaintiff sues both the municipality and municipal officers in their official capacity, the "official-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant." *Higdon v. Fulton Cty.*, 746 F. App'x 796, 799 (11th Cir. 2018). "Although most cases dismissing official capacity claims as duplicative of claims against a municipality involve identical § 1983 claims, courts within this Circuit have recognized that the same logic extends to official capacity claims brought under the Voting Rights Act." *Ala. State Conference of NAACP v. City of Pleasant Grove*, 372 F. Supp. 3d 1333, 1339 (N.D. Ala. 2019) (listing examples).

Plaintiffs' claims against Defendant Perkins in her official capacity are duplicative of their claims against the Board of Elections and Registration. Plaintiffs admit that "this suit against Ms. Perkins in her official capacity is merely another way of pleading the action against the Board of Elections and Registration of which she is an employee and an agent." (Doc. 31 at 4.) In their Amended Complaint, Plaintiffs seek to have the Court "enjoin Defendants from conducting any future elections for the Board of Education under the existing at-large system"

---

[2]     Defendant Perkins also argues that Plaintiffs' claims against her, in her official capacity, should be dismissed under Rule 12(b)(6) because she cannot independently provide the injunctive relief Plaintiffs seek. (Doc. 27-1 at 3.) As the Court grants the Motion to Dismiss Plaintiffs' claims against Defendant Perkins, in her official capacity, the Court does not reach this argument.

and "from failing to conduct elections for the Board of Education in a timely fashion pursuant to a redistricting plan that complies with Section 2 of the Voting Rights Act and the Constitution of the United States . . . ." (Doc. 24 at 8.) As Plaintiffs concede, "the Board [of Elections and Registration] is the Election Superintendent and has authority to call or hold the elections in Crisp County" and, therefore, can direct Defendant Perkins to "provide any of the relief sought by Plaintiffs and ordered by this Court." (Doc. 31 at 3 (internal quotation marks omitted)); *see* O.C.G.A. § 21-2-2(35)(a) (defining Election "Superintendent" as either "the judge of the probate court of a county or the county board of elections, *the county board of elections and registration*, the joint city-county board of elections, or the joint city-county board of elections and registration, if a county has such" (emphasis added)). The Court can afford Plaintiffs their requested relief regardless of whether Defendant Perkins remains in this action. Thus, permitting Plaintiffs to pursue their claims against both the Board of Elections and Registration and Defendant Perkins, in her official capacity, would be "needlessly redundant." *See City of Pleasant Grove*, 372 F. Supp. 3d at 1339 (citing *Busby*, 931 F.2d at 776). Accordingly, Plaintiffs' claims against Defendant Perkins, in her official capacity, are dismissed.

**II.    Doctrine of Laches**

Defendant Perkins also argues that Plaintiffs' Amended Complaint should be dismissed under the doctrine of laches. (Doc. 27-1 at 6.) "The equitable doctrine of laches will bar a claim when three elements are present: '(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.'" *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000) (quoting *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997)). While "the doctrine is an equitable doctrine that should be applied flexibly," a defendant bears the burden of showing the presence of all "three elements in order to successfully assert laches as a defense . . . ." *Kason Indus.*, 120 F.3d at 1203. Generally, the doctrine of "laches serves as a bar only to the recovery of retrospective damages, not to prospective relief." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1321 (11th Cir. 2008). However, the Eleventh Circuit has held that it may be applied where, as here, the prospective relief involves a redistricting request. *See Sanders v. Dooly Cty.*,

5

245 F.3d 1289, 1290–91 (11th Cir. 2001) (per curiam).

Plaintiffs' claims are not barred by the doctrine of laches. First, Defendant Perkins has not shown that Plaintiffs delayed bringing their claims or that their delay, if any, was inexcusable. While Defendant Perkins states that the challenged at-large voting system "has been used for many years without opposition from Plaintiffs," she does not indicate when the current system was adopted, how many elections have been held under the system, or when the Plaintiffs became subject to the plan. (Doc. 27-1 at 7.) Defendant Perkins, instead, argues that Plaintiffs' claims are untimely because they were brought in 2017, seven years after the 2010 Census. That Plaintiffs brought their claims seven years after the 2010 Census does not, without more, demonstrate that they delayed in bringing their claims. BOE members are elected in the general election immediately preceding the expiration of their term of office. (Doc. 24 ¶ 13.) Since the 2010 Census figures were released, there were only three general elections and, at most, two elections for any particular seat prior to Plaintiffs bringing their claims. Given the "particular challenges due to the fact-driven nature of the legal tests required by the Supreme Court" in assessing Section 2 claims and the need for experts to corroborate said claims, waiting two election cycles to file suit is not an inexcusable delay. *See Ga. State Conference of NAACP v. Fayette Cty. Bd. of Comm'rs*, 775 F.3d 1336, 1348 (11th Cir. 2015) (explaining the difficulty in assessing Section 2 claims).

Second, Defendant Perkins has not shown undue prejudice. Relying on *White v. Daniel*, 909 F.2d 99 (4th Cir. 1990), Defendant Perkins argues that redistricting at this point in the decade would deny "fair and accurate representation to the citizens" of Crisp County. (Doc. 27-1 at 7.) In *White*, the Fourth Circuit held that the plaintiffs' Section 2 claims were barred by the doctrine of laches. 909 F.2d at 104–05. The plaintiffs initiated their action in September 1988, challenging the redistricting plan for electing members to the county board of supervisors. *Id.* at 100. The plan was adopted in 1971, based on 1970 Census figures, and provided for the election of five members to the board every four years from five single-member districts. *Id.* The redistricting plan was left unchanged following the 1980 Census. *Id.* at 102. The Fourth Circuit held that the plaintiffs' delay was "inexcusable and unreasonable" because the redistricting plan had been in effect for seventeen years before the plaintiffs

6

challenged it and because there were no more elections set to be held under the current plan, as the 1990 Census required redistricting ahead of elections in November 1991. *Id.* at 103, n.4. The Fourth Circuit further found that the plaintiffs' inexcusable delay prejudiced the defendants, as affirming the district court's order would have required the board of supervisors to reapportion itself twice within a two-year period, "creating instability and dislocation in the electoral system and [ ] imposing great financial and logistical burdens." *Id.* at 104. *White* is distinguishable from the present case.

Here, unlike in *White*, there is no evidence that Plaintiffs delayed bringing their claims for almost two decades. Plaintiffs also are not challenging single-member voting districts but rather the at-large voting system for electing BOE members. Critical to the Fourth Circuit's holding in *White* was that the redistricting plan challenged by the plaintiffs would not be used again, since the 1990 Census would most likely require defendants to redraw their single-member district lines. No such concern exists here. Because BOE members are elected at-large, the entire county elects each BOE member, and there are no district lines to redraw, regardless of the 2020 Census figures.[3] Thus, neither Defendants nor the citizens of Crisp County will suffer from the instability, dislocation, or financial and logistical burdens attendant to redrawing district lines twice within a short timeframe. Requiring Plaintiffs to refile this action after the 2020 Census results are released, however, will arguably result in Plaintiffs suffering substantial prejudice, as they will continue to be subject to the allegedly discriminatory at-large voting system for at least two-election cycles after they first filed suit. Because Defendant Perkins failed to show that Plaintiffs inexcusably delayed in bringing their claims or that she will suffer undue prejudice, Plaintiffs' claims are not barred by laches.

## CONCLUSION

For the reasons provided above, Defendant Perkins' Motion (Doc. 27) is **GRANTED in part and DENIED in part**. Accordingly, Plaintiffs' claims against Defendant Perkins, in her official capacity, are **DISMISSED with prejudice**. In its March 16, 2018 Order, the Court

---

[3]     Notably, even if not elected at-large, municipalities are not required by Georgia law to redraw local election districts following the decennial census. *See* O.C.G.A. § 36-35-4.1 ("[T]he governing authority of any municipal corporation is authorized to reapportion the election districts from which members of the municipal governing authority are elected following publication of the United States decennial census . . . .").

stayed all existing deadlines in this action pending the outcome of mediation. (Doc. 45 at 2.) As the Parties have not reached a settlement, the current stay is hereby **LIFTED**, and the Parties are **ORDERED** to confer and submit an amended Scheduling and Discovery Order no later than **Monday, September 21, 2020**.

      **SO ORDERED**, this 31st day of August, 2020.

                           /s/ Leslie A. Gardner
                           **LESLIE A. GARDNER, JUDGE**
                           **UNITED STATES DISTRICT COURT**