**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| MATHEW WHITEST, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.: 1:17-CV-109 (LAG) |
| | : | |
| CRISP COUNTY GEORGIA BOARD | : | |
| OF EDUCATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**<u>ORDER</u>**

Before the Court are the Whitest Plaintiffs and Defendants' (Movants) Joint Motion for Entry of a Consent Order (Consent Motion) (Doc. 98) and Supplemental Brief and Scheduling Proposal (Brief) (Doc. 102). The "Whitest Plaintiffs" refers to Plaintiffs Matthew Whitest and Curtis Lucas. The five other named Plaintiffs in the matter, Crandell Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead, Jr., are referred to as the "Postell Plaintiffs." The four other Postell Plaintiffs signed sworn affidavits giving Crandell Postell the authority "to act on [their] behalf to settle all issues" and specifically outlined their settlement preferences, including a "[c]ease and [d]esist at-large method of election Candidates," and "[r]edistricting the six (6) [existing] districts so that it complies with Section 2 of the Voting Rights Act." (Doc. 49-4). This complicated situation is caused by disagreements between Plaintiffs on the appropriate restructuring of the Crisp County Georgia Board of Education in order to remedy an alleged violation of Section 2 of the Voting Rights Act. (Doc. 47). Three of the Plaintiffs attended a mediation of the matter on May 7, 2018: Mathew Whitest, Curtis Lucas Jr., and Crandall Postell. (*Id.* at 1). Plaintiffs Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr. were unable to attend and, with written permission, were represented by Plaintiff Postell. (*Id.*). The Whitest Plaintiffs reached a tentative settlement agreement with Defendants. (*Id.* at 2). The

Postell Plaintiffs opposed the Whitest Plaintiff's plan, and Plaintiffs' Counsel filed a motion to withdraw as counsel for the Postell Plaintiffs, stating that "it has become abundantly clear, notwithstanding repeated efforts to resolve [Plaintiffs'] differences over the last several months, that the Plaintiffs are not generally aligned in interest." (Doc. 48 at 2). Because of this disagreement, the Court granted Plaintiffs' Counsel Motion to Withdraw (*Id.*). Plaintiff Postell and the Postell Plaintiffs have not secured new counsel and are proceeding *pro se*. (*See generally* Docket).

In light of this unique procedural posture, on February 25, 2021, following a call with the Movants to determine if they had conferred with or obtained the consent of the Postell Plaintiffs before filing the Consent Motion, the Court ordered the Movants to address whether the Court has the legal authority to enter the Consent Order (Doc. 98) without the consent of all Plaintiffs. (Doc. 100). *See Reynolds v. Roberts*, 251 F.3d 1350, 1357 (11th Cir. 2001) ("Lacking the consent of all of the parties, the court obviously lack[s] the power to enter a decree purportedly based on consent, for 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'" (quoting *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 522 (1986)). On March 1, 2021, Plaintiff Postell filed Plaintiff Crandell Postell's Response in Opposition to the Joint Motion for Entry of a Consent Order (Objection), stating "the parties do not agree [on the settlement], [and] the Postell's plaintiff[s] which are the majority are in opposition to the Whitest Plaintiffs and Plaintiffs' Counsel." (Doc. 101). On March 29, 2021, Movants filed this Brief.

The Proposed Consent Order (Doc. 98-1) purports to resolve this litigation by creating a revised Board consisting of five members, four of which are elected from single-member districts and one elected at-large member. (*Id.* at 3). Two of the single-member districts will be located in the north and south sides of the City of Cordele, and the remaining two districts will be located in the east and west sides of the County. (*Id.*). The Postell Plaintiffs object to the Proposed Consent Order. (Doc. 101). While the Objection did not state the specific basis, in response to the motion of counsel to withdraw from representation of the Postell Plaintiffs (Doc. 51), the Postell Plaintiffs

stated that they support the "Crisp County BOE Plan 1," which provides for six single-member districts.[1] (Doc. 51-1 at 9). Under BOE Plan 1, three of the districts would be majority African American. (*Id.* at Ex. A). Postell argues that Plan 1 is a "fair settlement . . . [which] will give Blacks an equal opportunity to run for office and elect to office the candidates that serve our best interest." (*Id.* at Ex. G).

Movants rely on *Local No. 93* and *United States v. Dekalb Cnty.*, No. 1:10-CV-4039-WSD, 2011 WL 6402203 (N.D. Ga. Dec. 20, 2011) for the proposition that the Postell Plaintiffs are entitled to have their objections heard, but that their potential objections should not prevent the Court from conducting an evidentiary hearing and granting the Consent Motion. Both cases are distinguishable. In *Local No. 93*, the Supreme Court held that for the purpose of a consent decree,

> [i]t has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation. Thus, while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.

478 U.S. at 528–29 (citations omitted). Importantly, however, the Court went on to explain that consideration of the proposed consent decree in *Local No. 93* was appropriate because "[i]t impose[d] no legal duties or obligations on the [non-consenting

---

[1]    "A document filed *pro se* is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotations omitted); *see also Redford v. Wright*, 1:09-MI-0200, 2009 WL 3180403, at *5 (N.D. Ga. Sept. 25, 2009) (The rule holding *pro se* pleadings and complaints to less stringent standards liberally "applies to all *pro se* filings. We see no reason why the general rule [affording liberal construction of pro se pleadings] should not apply to *pro se* motions." (alteration in original) (internal quotations and citations omitted)). The Court is conscious of the rule that "the leniency accorded *pro se* litigants does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading to sustain an action." *Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 F. App'x 969, 969 n.1 (11th Cir. 2015) (per curiam) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)). Here, the Court is not acting as *de facto* counsel for the Postell Plaintiffs, nor is the Court ruling on Plaintiff Postell's objection. Rather, the Court, in determining whether it can appropriately consider the Motion for a Consent Order, is reviewing the record as a whole.

party] at all" and "[did] not purport to resolve any claims the [non-consenting party] might have." *Id.* at 530. In so deciding, the Supreme Court held that,

> parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor. And, of course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree.

*Id.* at 529 (internal citations omitted). Citing *Local No. 93*, the Eleventh Circuit held "the objection of a party whose rights or claims would be adversely affected **does** bar a proposed consent decree." *United States v. City of Hialeah*, 140 F.3d 968, 975 (11th Cir. 1998) (emphasis added). "[T]o the extent a proposed consent decree affects the rights of nonconsenting parties, 'its validity must be tested by the same standards that are applicable in any other adversary proceeding.' In 'any other adversary proceeding' a nonconsenting party's rights cannot be abrogated merely upon a showing of a prima facie case; that can be done only in a judgment entered following trial (or summary judgment)." *Id.* at 977 (citing *United States v. City of Miami*, 664 F.2d 435, 436 (5th Cir. 1981) (Rubin, J., concurring)). Thus, if the proposed consent decree would adversely affect the rights of the Postell Plaintiffs, the Court is barred from entering it.

The proposed consent decree would affect the right of the Postell Plaintiffs to have BOE Plan 1 considered and would put in place, with the authority of the Court, the at-large plan that is expressly opposed by the Postell Plaintiffs. This would be a clear abrogation of the rights of the Postell Plaintiffs—something that can only be done through a judgment entered after a trial. Accordingly, as the proposed consent decree affects the rights of nonconsenting parties, pursuant to the Eleventh Circuit's holding in *City of Hialeah*, it's validity must be tested within the context of an adversary proceeding. 140 F.3d at 977. The Consent Motion (Doc. 98), therefore, is **DENIED**.

**SO ORDERED**, this 29th day of April, 2021.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**