IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| MATHEW WHITEST, *et al.*, | : |
| Plaintiffs, | : |
| v. | : CASE NO.: 1:17-CV-109 (LAG) |
| CRISP COUNTY GEORGIA BOARD OF EDUCATION, *et al.*, | : |
| Defendants. | : |

# ORDER

Before the Court is Whitest Plaintiffs' Motion for Summary Judgment (Motion) (Doc. 110). For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

## PROCEDURAL BACKGROUND

On June 14, 2017, Plaintiffs Mathew Whitest and Curtis Lucas Jr., (collectively, the Whitest Plaintiffs), along with the Postell Plaintiffs[1] (Crandall Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr.,) instituted this action challenging Defendant Crisp County, Georgia's Board of Education's (BOE) at-large election method as a violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. (Doc. 1).

On February 2, 2021, the Whitest Plaintiffs and Defendants filed a Joint Motion for Entry of a Consent Order (Consent Motion) (Doc. 98). The Court denied the Consent Motion because not all of the Parties to the action had, in fact, consented. (Doc. 103). Thereafter, the Whitest Plaintiffs filed this Motion for Summary Judgment as to the First

---

[1] After a disagreement about the settlement of the matter could not be resolved between the Whitest and Postell Plaintiffs, the Court granted Plaintiffs' Counsel's Motion to Withdraw from Representation of the Postell Plaintiffs. (Doc. 64). Plaintiff Postell and the Postell Plaintiffs have not secured new counsel and are proceeding *pro se*. (*See generally* Docket).

Amended Complaint (Doc. 24),[2] to which Defendants responded on July 29, 2021. (Docs. 110, 113–14). Plaintiff Postell filed a baseless and untimely Motion to Strike Pursuant to Federal Rules of Civil Procedure 12(f). (Doc. 116).[3] No other Plaintiffs responded to the Motion.[4] Accordingly, the Motion is ripe for review. M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends that no genuine issue of material fact remains, and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013) (citations omitted). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (per curiam) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)).

"An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*,

---

[2] Plaintiffs filed a Motion for Leave to Amend their Complaint (Doc. 107), which the Court denied (Doc. 118). Accordingly, the Motion for Summary Judgment is considered in light of the First Amended Complaint (Doc. 24).

[3] The Court denied this Motion (Doc. 118), holding with regard to the Motion for Summary Judgment that the law does not require the consent of all parties, or even all of the Plaintiffs, in order to consider a Motion for Summary Judgment and that Postell's Motion to Strike the Motion for Summary Judgment was untimely.

[4] While the Court collectively refers to Plaintiffs Postell, S. Williamson, K. Williamson, and Whitehead as the Postell Plaintiffs, as these individuals have not secured counsel independently or collectively, they each are considered to be proceeding *pro se* as individuals. "[A]n advocate who is not a member of the bar may not represent clients (other than himself) in court." *Wheat v. United States*, 486 U.S. 153, 159 (1988). To the Court's knowledge, Plaintiff Postell is not a member of the Bar and has not entered an appearance as a lawyer; therefore, he cannot represent any other party in court filings. Accordingly, Plaintiff Postell's Response (Doc. 116) is deemed to be filed on behalf of himself and no one else.

477 U.S. 242, 248 (1986)) (other citation omitted). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Allen*, 121 F.3d at 646. The Court shall, however, "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009) (per curiam). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24; *Barreto*, 331 F. App'x at 673; *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)). "When that burden has been met, the burden shifts to the nonmovant . . . to go beyond the pleadings and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 556–57 (11th Cir. 2014) (per curiam) (citations omitted). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see also Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

## FACTS

Defendants stipulated to all of the facts set forth in Plaintiffs' Statement of Undisputed Material Facts (Doc. 110-1). As noted in footnote three, Plaintiff Postell filed a Motion to Strike Pursuant to Federal Rules of Civil Procedure 12(f). (Doc. 116). In addition to being untimely and misstating the relevant law, to the extent the Motion to Strike purports to be a response to the Motion for Summary Judgment, it does not include a statement of contested material facts. (*Id.*). Under Local Rule 56, "[t]he respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may consider the fact undisputed for the purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). Accordingly, as neither Defendants nor Plaintiff Postell deny any material facts, the material facts set forth in the Whitest Plaintiffs' statement of undisputed material facts are deemed admitted. Fed. R. Civ. P. 56(e)(2).

Plaintiffs Mathew Whitest, M.D. and Curtis Lucas, Jr. are African Americans, registered voters, and residents of Crisp County, Georgia. (Doc. 110-2 ¶ 3). Defendant Crisp County School District is a political subdivision of the State of Georgia. (*Id.* ¶ 4). Defendants Justin Posey, Scott Forehand, Lydia Adkins, Lelee Phinney, Lonnie Nelms, Elizabeth Maddox are members of the Crisp County Board of Education, which is the governing body of the Crisp County School District. They are sued in their official capacity only. (*Id.* ¶ 5). Defendant Crisp County Board of Elections and Registration is responsible for conducting elections for members of the Crisp County Board of Education. (*Id.* ¶ 6).

According to the 2010 Census, the total population of Crisp County is 22,439 persons, of whom 53.3 percent are white and 43 percent are Black. (*Id.* ¶ 7). The voting-age population is 17,317, of whom 58 percent are white and 39 percent are Black. (*Id.*). According to recent data from the Secretary of State, Crisp County has 12,867 registered voters, of whom 52.8 percent are white and 40.7 percent are Black. (*Id.* ¶ 8). The Crisp

County Board of Education consists of six members elected at large to six-year terms. (*Id.* ¶ 9). Elections are partisan and are held at the November general election and a majority-vote is required for election. (*Id.*). African Americans in Crisp County are sufficiently numerous and geographically compact that they could constitute a majority of the voting-age population in two or more single-member districts for the election of members of the Board of Education. (*Id.* ¶ 10). African Americans in Crisp County are politically cohesive in elections for members of the Board of Education, but the white majority votes sufficiently as a bloc to enable it to defeat the candidates preferred by Black voters in elections for members of the Board of Education. (*Id.* ¶¶ 11–12). There is a history of discrimination against African Americans in Crisp County and Georgia, and voting in elections for members of the Board of Education is racially polarized. (*Id.* ¶¶ 13–14). The Whitest Plaintiffs and Defendants agree that the at-large method of electing members of the Board of Education lacks proportionality in that the percentage of districts in which Black voters constitute an effective majority are less than the Black share of Crisp County's voting-age population. (*Id.* ¶ 15).

## DISCUSSION

**I.     Defendants Violated Section 2 of the Voting Rights Act**

Section 2 of the Voting Rights Act prohibits voting practices and procedures that discriminate on the basis of race, color, or membership in a language minority. 52 U.S.C. § 10301. This prohibition includes "vote dilution" through the use of at-large elections. *Thornburg v. Gingles*, 478 U.S. 30, 56 (1986); *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1288-89 (11th Cir. 2020); *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1342 (11th Cir. 2015). "'Vote dilution' refers to the effect of election methods that dilute the voting strength of racial minority voters in the larger voting population; this constitutes a violation when plaintiffs prove that the electoral structure operates to minimize or cancel out [minority voters'] ability to elect their preferred candidates." *Ga. State Conf. of NAACP*, 775 F.3d at 1339 n.3 (alteration in original). "The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality

5

in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Gingles*, 478 U.S. at 47.

The Supreme Court, in *Gingles*, set forth three preconditions for a vote-dilution claim under Section 2:

> First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district. . . . Second, the minority group must be able to show that it is politically cohesive. . . . [and] [t]hird, the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it—in the absence of special circumstances, such as the minority candidate running unopposed—usually to defeat the minority's preferred candidate.

*Id.* at 50–51 (footnotes and citations omitted). "[I]n evaluating a statutory claim of vote dilution through districting, the trial court is to consider the totality of the circumstances and to determine, based upon a searching practical evaluation of the past and present reality, whether the political process is equally open to minority voters." *Id.* at 79 (internal quotation marks and citations omitted). Referencing the Senate Judiciary Committee Majority Report which accompanied the amendment to Section 2, the Court identified seven typical and two probative circumstances to be considered when analyzing possible Section 2 violations. *Id.* at 36–37. The Court noted, however, that "[w]hile the enumerated factors will often be pertinent to certain types of § 2 violations, particularly to vote dilution claims, other factors may also be relevant and may be considered." *Id.* at 45 (quoting S. Rep., at 29) (footnote and internal citations omitted); *see also Wright*, 979 F.3d at 1289. The seven enumerated circumstances are:

> 1. the extent of any history of official discrimination in the state or political subdivision that touched the right of the members of the minority group to register, to vote, or otherwise to participate in the democratic process;
>
> 2. the extent to which voting in the elections of the state or political subdivision is racially polarized;

>   3.  the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;
>
>   4.  if there is a candidate slating process, whether the members of the minority group have been denied access to that process;
>
>   5.  the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;
>
>   6.  whether political campaigns have been characterized by overt or subtle racial appeals;
>
>   **7.**  the extent to which members of the minority group have been elected to public office in the jurisdiction.

*Gingles*, 478 U.S. at 36–37 (citation omitted). The two "probative" circumstances identified by the Senate Committee are:

> whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group; and
>
> whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.

*Id.*

As noted by the Supreme Court and the Senate Committee, "'there is no requirement that any particular number of factors be proved, or that a majority of them point one way or the other.'" *Id.* at 45 (quoting S. Rep., at 29) (internal citations and footnote omitted); *see also Wright*, 979 F.3d at 1289. The Supreme Court also explained that proportionality is "a relevant fact in the totality of circumstances[,]" which asks "whether minority voters form effective voting majorities in a number of districts roughly

proportional to the minority voters' respective shares in the voting-age population." *Wright*, 979 F.3d at 1289 (internal quotation marks omitted) (first quoting *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 436 (2006); and then quoting *Johnson v. De Grandy*, 512 U.S. 997, 1000 (1994)).

Plaintiffs assert that, when conducting its analysis, the Court should consider another relevant factor: racial separation. (Doc. 110 at 9–10). The Court has found, and Plaintiffs cite to, no Eleventh Circuit cases recognizing racial separation as a relevant consideration for a Section 2 analysis. In the absence of such authority and in light of the weight of the other considerations, the Court declines to consider racial separation in this analysis. *See Wright v. Sumter Cnty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297, 1323 (M.D. Ga. 2018), *aff'd*, 979 F.3d 1282 (11th Cir. 2020).

"Although the Supreme Court has made clear that the district courts must perform this totality-of-the-circumstances analysis, it will be only the very unusual case in which the plaintiffs can establish the existence of the three *Gingles* factors but still have failed to establish a violation of § 2 under the totality of circumstances." *Ga. State Conf. of NAACP*, 775 F.3d at 1342 (citation omitted). Rather, the essential inquiry in a Section 2 case is "whether the political process is equally open to minority voters." *Gingles,* 478 U.S. at 79. "A discriminatory *result* is all that is required; discriminatory intent is not necessary." *Ga. State Conf. of NAACP*, 775 F.3d at 1342 (citation omitted).

The Whitest Plaintiffs and Defendants have stipulated to liability and the existence of the three *Gingles* preconditions. Specifically, Defendants have stipulated that,

> 1. African Americans in Crisp County are sufficiently numerous and geographically compact that they could constitute a majority of the voting-age population in two or more single-member districts for the election of members of the Board of Education.
>
> 2. African Americans in Crisp County are politically cohesive in elections for members of the Board of Education.

   3. A white majority votes sufficiently as a bloc to enable it to defeat the candidates preferred by Black voters in elections for members of the Board of Education.

(Doc. 110-1 ¶¶ 10–12; *see also* Doc. 114). Additionally, Defendants have stipulated to some of the Senate Factors and that the at-large method of election lacks proportionality. Specifically, Defendants stipulated that,

   1. There is a history of discrimination against African Americans in Crisp County and Georgia.

   2. Voting in elections for members of the Board of Education is racially polarized.

   3. The at-large method of electing members of the Board of Education lacks proportionality in that the percentage of districts in which Black voters constitute an effective majority is less than the Black share of Crisp County's voting-age population.

(Doc. 110-1 ¶¶ 13–15; *see also* Doc. 114).

  Accordingly, there is no genuine issue of material fact as to whether Black voters in Crisp County have less opportunity than white voters to elect candidates of their choice to the Board of Education and that this constitutes a violation of Section 2. Therefore, Summary Judgment as to Plaintiffs' Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 claim is **GRANTED**.

## CONCLUSION

  For the reasons provided above, Whitest Plaintiffs' Motion for Summary Judgment (Doc. 110) is **GRANTED**. "[W]henever practicable," a federal court is to give elected officials an opportunity to remedy an unlawful election plan. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978). When, however, as is the case here, "the timing of an upcoming election makes legislative action impractical," *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Comm'rs*, 996 F. Supp. 2d 1353, 1357 (N.D. Ga. 2014), the Court should take "appropriate action to insure that no further elections are conducted under the invalid plan." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). The Court will therefore give

the pertinent elected officials an opportunity to craft an appropriate remedial plan within a reasonable timeframe that will allow the Court to review any such remedy to ensure compliance with Section 2. *Edge v. Sumter Cnty. Sch. Dist.*, 775 F.2d 1509, 1510 (11th Cir. 1985) (per curiam). In furtherance of that goal,

1. The Parties (the Whitest Plaintiffs, the Postell Plaintiffs, and the Defendants) are **ORDERED** to confer and file a Joint Report within two weeks of this Order identifying a date by which a remedy or an interim remedy would need to be in place in order for elections to proceed in 2022 under a new election plan. Should any Party fail or decline to participate in a timely manner, the participating Parties shall file the Joint Report setting forth attempts to confer with all Parties and the results thereof. Should all Parties not be able to reach an agreement, the Joint Report shall set forth the relative positions of the Parties for the Court's consideration.

2. The Crisp County School Board and the Crisp County Board of Elections and Registration are **ORDERED** to confer with Crisp County's legislative delegation to determine whether the General Assembly can address the issue of remedy in time for the 2022 elections and, if so, when that might take place. The Crisp County School Board and the Crisp County Board of Elections and Registration are **ORDERED** to provide a report to the Court within two weeks of the meeting between the Crisp County's legislative delegation and the General Assembly. Other Parties are permitted one week to respond to any such report.

3. The Court will then determine whether and, if so, how long, to give the General Assembly to devise a lawful remedy subject to pre-implementation review by the Court. If the Court determines, however, that the General Assembly is unlikely to devise a lawful remedy in time for the 2022 elections, then the Court will begin the process of devising its own interim remedy for use until superseded by legislative enactment.

4.   If the Court determines that an interim remedy might be necessary, the Court will invite all Parties to submit remedial proposals along with any evidence necessary to support those proposals. Other Parties will have an opportunity to respond, and there will be an opportunity to reply. The Court may adopt a proposal submitted by one of the Parties.

5.   If, after reviewing the Parties' proposals, the Court determines that none of them are acceptable remedies, the Court also may draw its own interim remedy.

**SO ORDERED**, this 20th day of August, 2021.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**