Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 07 2021

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

CRANDALL O. POSTELL,

    Plaintiff,

v.

LESLIE ABRAMS GARDNER, District Judge
Albany Division, in her official and individual
capacities, AMERICAN CIVIL LIBERTIES
UNION OF GEORGIA, AMERICAN CIVIL
LIBERTIES UNION FOUNDATION, INC., M.
LAUGHLIN McDONALD, SEAN J. YOUNG,
AKLIMA KHONDOKER, THE LAW OFFICE OF
BRYAN L. SELLS, LLC, BRYAN L. SELLS,
MATHEW WHITEST, and CURTIS LUCAS, JR.

    Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIVIL ACTION NO.:

1:21-CV-5013

## ORIGINAL COMPLAINT FOR DAMAGES, DECLARATORY, AND PERMANENT INJUNCTIVE RELIEF

**COMES NOW,** the Plaintiff CRANDALL O. POSTELL (hereinafter "Postell"), pro se and files this Original Complaint for Damages, Declaratory, and Permanent Injunctive Relief    against DISTRICT JUDGE LESLIE ABRAMS GARDNER (hereinafter "Judge Gardner") for violation of Postell's civil rights and the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1983, 1988, 28 U.S.C. § 1343 and Article I, Section I of the Georgia Constitution. In Addition, against AMERICAN CIVIL LIBERTIES UNION OF GEORGIA (ACLU), AMERICAN CIVIL

LIBERTIES UNION FOUNDATION, INC. (ACLU), M. LAUGHLIN McDONALD, SEAN J. YOUNG, AKLIMA KHONDOKER, THE LAW OFFICE OF BRYAN L. SELLS, LLC, BRYAN L. SELLS, MATHEW WHITEST and CURTIS LUCAS, JR. for breach of contract and states as follows:

## The Nature of the Case

1.      In 1938, the Crisp County Board of Education (hereinafter "BOE")  and Crisp County Board of Elections and Registration implemented a discriminatory practice whereby the County Districts would consist of East Crisp, West Crisp, and Arabi. The Crisp County School Board Members consist of six members: three members are elected from the City of Cordele and one member from East Crisp which consist of the City of Cordele and Crisp County, another from West Crisp which consist of the City of Cordele and Crisp County, and one member from Arabi which consist of the City of Arabi, Crisp County, and the City of Cordele all at-large elections. The Crisp County School Board Members consist of six whites members with over sixty-one percent black population in attendance.

2.      On January 31, 2017, the ACLU hired an expert to  create "Crisp County BOE Plan 1"; a six district plan for the BOE. In May of 2017, Plaintiffs Mathew Whitest, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, George Whitehead, Jr., Curtis Lucas, Jr. and Plaintiff Crandall Postell approved said plan and entered into an "Engagement Agreement" with the American Civil Liberties Union Foundation, Inc. and the American Civil Liberties Union Foundation of Georgia

(hereinafter both referred to as "ACLU") and along with attorney Bryan L. Sells. The plaintiffs agreed to allow the ACLU and other attorneys to represent them solely for the purposes of challenging the at-large method of electing the Crisp County Board of Education Members; A violation of Section 2 of the Voting Rights Act. The ACLU would receive compensation for cost and attorney's fees if a settlement or verdict was in Plaintiffs' favor.

3.      This action seeks damages, declaratory and permanent injunction relief against Judge Gardner from further participation in both cases involving Plaintiff Postell; *Mathew Whitest, et al., v. Crisp County Georgia Board of Education, et al.* , 1:17-CV-00109-LAG and *Crandall O. Postell v. The City of Cordele, et al.,* 1:19-CV-00148-LAG. The ACLU and attorneys representing Plaintiffs filed a Joint Status Report and disclosed to the Court the substance of mediation communication by stating Plaintiff Postell's position concerning the proposed 4-1 plan. After this violation of Postell's rights, Postell filed a motion for sanction, motion to drop plaintiffs Whitest and Lucas, and a motion to disqualify Bryan Sells, M. Laughlin McDonald, Akilima Khondoker, Sean J. Young and the ACLU all together. Judge Gardner allowed nine months to pass before conducting an Evidentiary Hearing, during this time Judge Gardner set chair in over 50 cases where she entered orders on various motions that were filed after Postell's motion for sanction. Judge Gardner discriminated against Postell because he's not an attorney, prevented Postell's discovery on his motion for sanction against the ACLU, and delayed Postell's cases over a year before taking any actions. This Court can correct this

injustice by removing Judge Gardner from both cases and issue a order removing Mathew Whitest and Curtis Lucas from the case of Mathew Whitest, et al. v. Crisp County Georgia Board of Education, et al.

## JURISDICTION AND VENUE

4.     This Court has proper jurisdiction over the parties to this action and over the subject matter pursuant to Title 42 U.S.C. §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution for the deprivation of Postell's constitutional rights under color of state law. Accordingly, this Court has original jurisdiction over Postell's claims pursuant to 28 U.S.C. §§ 1391(b)(2), 1331and 1343.

5.     Plaintiff also asserts Georgia state law claims against Defendants that arise out of the same transaction or occurrence that serves as the basis for Postell's claims arising under federal law; therefore, this Court has supplemental jurisdiction over Postell's state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this district under 28 U.S.C.§ 1391(b)(1) because at least one Defendant resides in this judicial district.

7.     This district is also an appropriate venue for this action under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Furthermore, the ACLU organization is situated within the district and divisional boundaries of the Northern District of Georgia, Atlanta Division.

8.     This is an action for damages in excess of $75,000.00 both declaratory and permanent injunctive relief in order to restrain Judge Gardner from acting in furtherance in both cases; *Mathew Whitest, et al., v. Crisp County Georgia Board of Education, et al.,* case number: 1:17-CV-109 LAG and *Crandall O. Postell v. City of Cordele, Georgia, et al.,* case number:1:19-CV-148 LAG in violation of Postell's Constitutional Rights.

## **PARTIES**

### PLAINTIFF

9.     Plaintiff CRANDALL O. POSTELL is a resident of Cordele, Georgia and submits himself to the jurisdiction of this Court.

### DEFENDANTS

10.     Defendant LESLIE ABRAMS GARDNER a resident of Dougherty County, she is a District Judge of the Middle District of Georgia, Defendant Gardner presides over proceeding in the United States District Court of Georgia, Albany Division. Defendant Gardner is sued in her official and individual capacities. Defendant Gardner may be served at 201 West Broad Avenue, Albany, Georgia 31701.

11.     Defendant AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA (hereinafter "ACLU"), a organization located in Fulton County and organized and operating under the authority of the laws of the State of Georgia and is responsible for hiring, training, supervision, and discipline of agents/attorneys. Service

for ACLU can be made at its administrative office located at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

12.    Defendant AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC. (hereinafter "ACLU"), a organization located in Fulton County of the State of Georgia and organized under the laws of the State of Georgia and operating under the authority of the State of Georgia. Service for ACLU can be made at its administrative office located at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

13.    Defendant M. LAUGHLIN McDONALD is a resident of Fulton County Georgia and at all relevant times was an attorney with the ACLU. Defendant McDonald is a resident and citizen of the State of Georgia and may be served with process through the ACLU at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

14.    Defendant SEAN JENGWEI YOUNG is a resident of Fulton County Georgia and at all relevant times was an attorney with the ACLU. Defendant Young is a resident and citizen of the State of Georgia and may be served with process through the ACLU at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

15.    Defendant AKLIMA KHONDOKER is a resident of Fulton County Georgia and at all relevant times was an attorney with the ACLU. Defendant McDonald is a resident and citizen of the State of Georgia and may be served with process through the ACLU at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

16.    Defendant THE LAW OFFICE OF BRYAN L. SELLS, LLC is a business in the State of Georgia an is authorized to conduct business in the State of Georgia.

Defendant may be served at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

17.    Defendant BRYAN L. SELLS is a resident of Fulton County Georgia and at all relevant times was an attorney with the ACLU. Defendant Sells is a resident and citizen of the State of Georgia and may be served with process through the ACLU at 2700 International Tower 229 Peachtree Street, Atlanta, Georgia 30303.

18.    Defendant Mathew Whitest is a resident of Cordele, Georgia and may be served with process at 401 15th Street North, Cordele, Georgia 31015.

19.    Defendant Curtis Lucas Jr. is a resident of Cordele, Georgia and may be served with process at 1809 Oconee Circle, Cordele, Georgia 31015.

Factual Allegations

20.    In May of 2017, Counselors with the ACLU; Laughlin McDonald, Bryan L. Sells, Aklima Khondoker, and Sean J. Young entered into an "Engagement Agreement" with plaintiffs Mathew Whitest, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, George Whitehead, Jr., Curtis Lucas, Jr. and Crandall Postell (See Attached as Exhibit "A").

21.    The Plaintiffs authorized representation solely for the purposes of challenging the at-large method of electing the BOE; a Section 2 violation of the Voting Rights Act.

22.    On August 30, 2017, the Plaintiffs filed their Amended Complaint and on September 13, 2017, the Defendants responded, shortly thereafter, the parties' counselors engaged in settlement negotiations.

23.    On January 12, 2018, Defendant BOE issued a Consent Order Proposal to change from six (6) board members to four (4) board members with one (1) at-large board member.

24.    Plaintiffs' counselors agreed with the Defendants and attempted to persuade plaintiffs to agree to a Section 5 proposal. Plaintiffs Postell, Sarah, Kenya, Betty Jean, and George Whitehead, Jr. ("Postell Plaintiffs") refused to agree and demanded that the case proceed to trial.

25.    Plaintiffs Mathew Whitest and Curtis Lucas, Jr. ("Whitest Plaintiffs"), agreed with the Defendants and Plaintiffs' counselors.

26.    On January 16, 2018, the parties' counselors filed their third Status Report and Consent Motion to Stay, representing they had drafted a proposed order settling the claims in the action but that both parties' counselors needed additional time to review the final settlement agreement with their respective clients.

27.    On January 23, 2018, the Plaintiffs' counselor McDonald emailed a memo with statements about their initial plan was impracticable and he wanted to conduct mediation in Cordele so all plaintiffs would be able to attend and wanted to know Plaintiffs' settlement remedy.

28. On May 7, 2018, mediation was held at JAMS Atlanta Resolution Center. Plaintiffs' Counselors McDonald, Sells, Khondoker, the mediator; R. Wayne Thorpe, Defendant's counselor Phillip L. Hartley, and Defendant's representative Dr. David Mims had a thirty minute settlement discussion outside the present of Plaintiffs Mathew Whitest, Curtis Lucas, Jr. and Crandall Postell all who appeared for mediation.

29. On May 22, 2018, Plaintiffs' Counselors and Defendants filed a Joint Status Report and disclosed to the Court the substance of mediation communications.

30. On May 24, 2018, the Plaintiffs' counselors filed their Motion to Withdraw as Counsel and disclosed to the court attorney-client communications.

31. On July 25, 2018, Postell filed his Motion for Sanction against Plaintiffs' counselors and the ACLU. And on September 4, 2018, Postell filed a motion for an Evidentiary Hearing and outlined the purpose of the hearing and what was expected to learn from said hearing.

32. On May 16, 2019, the Court granted Plaintiffs Counsels' motion to withdraw and set the evidentiary hearing for June 21, 2019 which was rescheduled for July 24, 2019.

33. At said hearing, Defendant Judge Gardner informed the parties; she would not allow any questions about actions leading to the mediation hearing. Postell's pending allegations against the Whitest Plaintiffs' counselors and the ACLU were the purpose of the hearing.

34.    When Defendant Judge Gardner set the hearing she failed to inform the parties of the limited scope of discovery. The Court disclosed no legal reason for such limited inquires which deprived Postell discovery and a due process violation.

35.    Defendant Judge Gardner allowed nine months to pass before conducting an Evidentiary Hearing, during this time Judge Gardner set chair in over 50 cases where she entered orders on various motions that were filed after Postell's motion for sanction.

36.    Defendant Judge Gardner discriminated against Postell for not being an attorney, prevented Postell's discovery on his motion for sanction against the ACLU, and delayed Postell's cases over a year before taking any action in the case of; *Crandall O. Postell v. The City of Cordele, et al.,* 1:19-CV-00148-LAG and *Mathew Whitest, et al. v. Crisp County Georgia Board of Education, et al.,* 1:17-CV-00109-LAG.

37.    On June 6, 2019, Postell filed his Motion to Drop Plaintiffs Whites and Lucas and to disqualify counselors Sells, McDonald, Khondoker, Young, and the ACLU.

38.    On February 26, 2020, eight months after said motion, Counselor McDonald filed his motion to withdraw as counsel as to the Whitest Plaintiffs. On February 28, 2020, Postell filed his response in opposition to counsel McDonald's motion. And on the same day, Judge Gardner granted said motion and denied Postell due process.

39.    In addition on that same day, counsel Aklima Khondoker filed her Motion to Withdraw as counsel to the Whitest Plaintiffs, and without allowing any response from Postell, Judge Gardner granted said motion on March 3, 2020.

40.     Defendant Judge Gardner took an oath which demands impartiality, and
every federal judge takes some form of the following oath:

> I, Leslie Joyce Abrams, do solemnly swear that I will
> administer justice without respect to persons, and do equal right
> to the poor and to the rich, and that I will faithfully and
> impartially discharge and perform all the duties incumbent upon
> me as a United State District Court Judge under the
> Constitution and laws of the United States. So help me God.

41.     This oath demanded that Defendant Gardner carry out her duties as a
United States District Judge.

42.     Defendant Judge Gardner was required to issue an order on Plaintiff
Postell's motion to disqualify before granting counselors McDonald and Khondoker's
motion to withdraw as attorney.

43.     On February 25, 2021, Defendant Judge Gardner conducted a sixteen
minute telephone conference where she discuss substantive matters and failed to
promptly notify Plaintiff Postell to give him an opportunity to be heard or respond.

44.     On May 5, 2021, Postell had the hearing transcribed and filed with the
Clerk of Court (See attached as Exhibit "B"). Judge Gardner was aware Plaintiff Postell,
Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead,
Jr. (collectively, "Postell Plaintiffs") are in dispute with all other parties whom she had
ex parte communications.

45.     Plaintiff Postell filed numerous of pleading in said action. Judge Gardner is aware, Plaintiff Postell were in opposition to the joint motion for entry of a consent order filed by Whitest Plaintiffs and the Defendants.

46.     On the call, Bryan Sells and Sean Young appeared for Whitest Plaintiffs, Bryan Tyson, Phillip Hartley and Loree Anne Paradise appeared for Defendants (collectively, "Movants"). Judge Gardner and the Movants discussed in great detail for sixteen minutes on how they were to proceed without potentially having inconsistent outcomes and discuss substantive matters concerning Postell's potential response:

PAGE 3 LINES 2-8

THE COURT: "... So the reason for the call is I received the parties' consent order. My question, my first question for you all is, have you been in touch with what we call the Postell plaintiffs in this matter? Did they consent to it? Because I don't, as just a threshold issue, I don't see how I can enter a consent order if we have parties to the matter who aren't party to the consent."

47.     The Movants failed to informed the Court if the Postell Plaintiffs were consulted or even if an attempt to contact the Postell Plaintiffs were made as was required.

48.     Defendant Judge Gardner informed the Movants she can not enter a consent order without all parties involvement. Judge Gardner served as *de facto* counsel for the Movants she helped them to rewrite their deficient motion to sustain an action. See

*Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 F. App'x 969, 969 n.1 (11th Cir. 2015).

Counselor Sells responded to Judge Gardner's statement:

PAGE 3 LINES 9-15

MR. SELLS: "... As we noted on the certificate of service, yes, we have served the Postell plaintiffs, if we want to call them that, all the pro se plaintiffs. And I have not heard from them at all, but I would respectfully disagree with your suggestion that you can't enter a settlement agreement among fewer than all the parties. I think that actually it's fairly routine."

49.    Judge Gardner corroborated her relationship with the Movants:

PAGE 3 LINES 16-25 and PAGE 4 LINES 1-5

THE COURT: "Well, it is fairly routine - - just to make sure we're all on the same page, I certainly could enter a settlement agreement among you all. I cannot enter a consent order among you all because a consent order is more than a settlement agreement. It's well established in the Eleventh Circuit that a consent order is broader than a settlement agreement and requires monitoring and continued action by the court and order by the court."

"And I can point you to the cases which clearly state that where - - in fact, there's an Eleventh Circuit case, Reynolds v. Roberts, 251 F.3d 1350, "Lacking the consent of all the parties, the court obviously lacked the power to enter a decree purportedly based

on consent for 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'"

50.     Judge Gardner was required to give Plaintiff Postell the opportunity to respond to this argument, but Judge Gardner failed to include the Postell plaintiffs in their ex parte telephone conference. Counsel Sells stated:

PAGE 4 LINES 13-25 and PAGE 5 LINE 1

MR. SELLS: "... I would like the opportunity to look at the case that you just cited and to brief the issue with the Court. I still respectfully disagree with your interpretation. And I would point to the Stovall vs. City of Cocoa case, which we cite in our motion, but it's at 117  F.3d 1238. That is a 1997 case involving a disputed consent decree in a voting rights actions."

"And, you know, not having had the opportunity to review that Reynolds case, I think maybe it would be in everyone's best interest to take a look at that and brief the Court, but we can't settle this case without continuing court intervention because of the nature of the way the settlement is structured, number one, but - - because we don't get the data until much later on."

51.     Defendant Sells requested the opportunity to brief the Court which was granted, but Judge Gardner failed to inform Postell or give Postell the opportunity to response to any of the arguments. Next Judge Gardner stated:

PAGE 5 LINES 2-11

THE COURT: "Right. And so I'm going to kind of short-circuit you because that was going to the second issue, the Stovall case. The cases - - Reynolds v. Roberts is the 2001 Eleventh Circuit, which, of course, cites to Stovall, which I think is slightly nuanced because the main issue in Stovall, although it does have some bearing on this, was one of the parties signed onto the agreement and then tried to withdraw from it, and the court said that the party who intentionally withdrew from it was bound by the agreement. And so I think we have a slightly different posture here."

52.     Judge Gardner quoted the case law which supports Plaintiff Postell position concerning the Whitest Plaintiffs and their counsel reneging on their initial contract. The Movants' joint motion for entry of a consent order, the Whitest Plaintiffs' motion for leave to amend their complaint, and the Whitest Plaintiffs' motion for summary judgment was filed without consulting the Postell Plaintiffs and without their consent.

53.     Judge Gardner continued strategizing with the Movants and stated:

PAGE 5 LINES 12-18

THE COURT: "... But certainly I'm happy for you all to brief it. But then even going with - - assuming that we can move forward with what you all have put forward, then we have the issue of, I think, you know, Stovall, I'm required to at least have an evidentiary hearing and make findings of fact and conclusions of law to support entering this. I can't simply sign off on it without doing some further inquiry.'

54.     Defendant Judge Gardner's statements are very compelling, it shows she became involved and pleaded with the Movants to get them to understand her position because she needed more from them. Judge Gardner continued:

PAGE 5 LINES 19-25

THE COURT: "... So, again, I'm not saying no to it, but I want to make sure that it's appropriate. I want to make sure that it's fair to all the parties and going to stand up to any type of review. And it would seem one of the issues, if we're going to go through briefing it, one of the things we need to be thinking is, when you brief it, whether or not we can have a portion of the parties consenting."

55.     Judge Gardner understood exactly what she was doing; strategizing with the Movants on how to proceed and understanding the Postell Plaintiffs are in opposition to the motion, she stated:

PAGE 6 LINES 1-13

THE COURT: "... I would also like you to brief what the standard of review would need to be in this case. Is this a matter in line, I believe, with Stovall, that, you know, is there a question, is there a strict scrutiny question or is there a different line of - - or a different standard of review that the Court would need to apply in this case." "So if you all want to, if you, when briefing that, please both touch on whether the Court can move forward with only partial consent of the plaintiffs and also what the standard of review would need to be. Just looking through it and going over it, I just don't know that

I can do this without an evidentiary hearing and making certain findings of fact to have an appropriate reference on which to rule."

56.    Judge Gardner failed to realize she's acting on the part of the Movants, she allowed the Movants to know where she stood without and before any argument from the Postell Plaintiffs. Next Counselor Sells stated:

PAGE 6 LINES 14-25 and PAGE 7 LINE 1

MR. SELLS: "... I agree wholeheartedly with you that the Court would need to have an evidentiary hearing. I think that the scope of that hearing will need to depend on the extent to which there are objections to the consent decree, which we don't know at this point, but if Mr. Postell wants to put on evidence, for example, to show under City of Stovall - - I mean City of Cocoa that the proposed consent decree is, I think the phrase is unreasonable, unfair, or unlawful, then we would meet that evidence with other evidence and legal argument, but it's a little premature to say what the standard of review would be at this point without knowing what the arguments are on - - in opposition to the consent decree."

57.    The Movants and Defendant Judge Gardner didn't know what Plaintiff Postell's arguments would be, neither did Postell know that the Movants and Judge Gardner was having ex parte conversations at the same time he was preparing his response to their consent motion. But the question that comes to a reasonable person mind, this doesn't sounds like a party that is on the same side as the Postell Plaintiffs. Judge Gardner stated:

PAGE 7 LINES 2-20

THE COURT: "Well, I guess to a certain degree, I think, looking at it - - in some ways I think you're correct, but I don't know that that we're completely foreclosed. I'm trying to be somewhat proactive so that when we set this, when we get ready to go forward - -but it may be that you all do not believe that this is - - if you're going to make the assertion that there's not an issue of - - like, if you're going to make the assertion that it race neutral, then, you know, even without objection or - - you know, then there's no need. But if, for example, you all are proceeding under a different theory other than race neutrality, then even without objection, the standard would be strict scrutiny. So I don't know exactly where you all are coming from, how you're going to present it."

"And so what I just want to make sure, from at least you all, that the Court is prepared and understands - - because I've gotten the draft and even the order doesn't touch - - the order is, the proposed order is, I would say, light on what the Eleventh Circuit would need to uphold it, uphold this consent decree. So I need more from what your perception is."

58.    Judge Gardner continued strategizing with the Movants giving them an opportunity to present other ways of accomplishing their task:

PAGE 7 LINES 21-25 and PAGE 8 LINES 1-2

THE COURT: "... Is this a matter that, for example, the districts that you all are proposing, is one of those so heavily African American as to it would even lean towards helping get an African American on the commission - - board? Because if that is, in fact,

the case, then your purpose of drawing it that way - - I don't believe that any objection has been raised to that issue - - if that's apparently there, then the court needs to speak to it."

59.    Counselor Sells responded to Judge Gardner's offer he stated:

PAGE 8 LINES 3-10

MR.SELLS: "Well, your Honor, we haven't drawn the districts yet. That's the, you know, the beauty, if you will, of the settlement. Maybe it's it's fault as well. But I think we can confidently say that all of the districts in the consent decree are race neutral because there aren't any - - there may come a time when we draw the districts and evaluate to determine whether those districts are racial gerrymanders or not, but that's not really before the Court at this point."

60.    Judge Gardner seek to discover the Movants' strategy, she stated:

PAGE 8 LINES 11-25

THE COURT:    "Well, I guess that is something I would like for you to put in front of me because one of the questions I have is, is it your intent to create districts that would increase diversity. So at this time, if your intent is not to do that, then state that. And I don't have to address that at this point. But if that is your intent, then I'll have to - - because I wasn't party to your discussions. I don't know what you're trying to do. I know the overall goal is to, I don't want to say the overall goal is to necessarily diversity. The overall goal is to have a fair representation. But if it is you have different districts, which is how these things look, then that is a question I would need to address."

"Now, if you're going to say it is our intent to have our districts and it's our intent to draw them to increase racial diversity, then state it and we can move on from there."

61.    Judge Gardner continued to strategize with the Movants, Counselor Sells stated:

PAGE 9 LINES 1-3

MR. SELLS: "... Your Honor, I think, I think maybe it would help if I step back and explain how the consent decree, how we envision it playing out."

Judge Gardner admitted she was having a substantive conversation concerning this case:

PAGE 9 LINES 4-21

THE COURT:    "Well, I think sort of what I don't want to do right now, I don't - - I'm slightly uncomfortable having a substantive conversation without having, quote, unquote, all of the parties to the action on the phone. For all intents and purposes, this is an ex parte conversation."

"Now, when it was a matter of me checking to see had you talked to the other parties and what were the details of the agreement that the Whitest defendants - - or plaintiffs and the defendants have reached, that's one thing. And I think that's appropriate to have with you all. But going into the substantive issues without giving at least all the parties an opportunity to be on the call, I wouldn't do that."

"So, really, I just want to tee up what the Court's concerns are and give you an opportunity to provide some supplemental briefing to support the consent, your motion,

and then we'll go from there. Because I need to have a - - if I need to have a full-on hearing, then we'll do it, but I really don't want to get more substantive than we are now."

62.     Any reasonable person would know that Judge Gardner's conversations with the Movants were totally inappropriate. She claimed "I wouldn't do that." but she just did.

63.     Counselor Phillip L. Hartley explained he can read between the lines:

PAGE 9 LINES 22-25 and PAGE 10 LINES 1-3

MR. HARTLEY: "... I understand what your Honor has said. And I think in the briefing we can set out for your Honor our understanding of what steps would have to be taken, the hearing, et cetera, and maybe what notice would go out before that. And I think that, together with the legal briefing, you know, I think gives your Honor what you're asking for."

64.     The Movants and Judge Gardner reached an agreement:

PAGE 10 LINE 4

THE COURT:     "That's precisely what I would like, yes."

Confirmation by the Movants:

PAGE 10 LINE 5

MR. HARTLEY: "I think we can do that."

65.     Defendant Judge Gardner was required to notify the Postell Plaintiffs immediately after this ex parte conversation which she failed to do. This too is another violation of Plaintiff Postell's constitutional right.

Counselor Sells stated:

PAGE 10 LINES 6-9

MR. SELLS: "Perhaps the vehicle for that briefing would be in response to Mr. Postell's objection to the motion. Or in reply, I suppose, to Mr. Postell's objection to the motion."

66.     Judge Gardner allowed the Movants to file their supplemental briefing without informing Plaintiff Postell of the hearing. Judge Gardner stated:

PAGE 10 LINES 10-25

THE COURT:     "So I'm ordering the parties to provide supplemental briefing to the level that Mr. Hartley just described now. I don't know what Mr. Postell is going to do. I don't know that Mr. Postell has - - I know that he's been served, but I don't know where he is and what his position on this is. The briefing that I want and quite honestly what Mr. Hartley has just kind of outlined, I think it's appropriate now."

"And before I move forward with a hearing, as Mr. Hartley pointed out, how we would go about what notice may be required, what would need to be established, if a hearing needs to be had - - this is a motion that you put forth. What's in the motion is - - the Court doesn't find a sufficient basis to make a ruling or even to move forward. So

I'm going to ask the parties to supplement their motions to the subjects that we've discussed. And I guess my next question is how long do you need to do it?"

67.     This sixteen minute ex parte conversation speaks for itself, Defendant Judge Gardner violated Postell's constructional rights. She has a duty to administer justice without respect to persons, she failed.

## COUNT I

*Violation of Procedural and Substantive Due Process Rights under the Fourteenth Amendment of the United States Constitution Against US District Judge Leslie Abrams Gardner*

68.     Plaintiff Postell repeats, re-alleges, and incorporates by reference the allegations in paragraphs 1 – 67 of this Original Complaint for Damages as fully set forth herein.

69.     On May 16, 2019, Defendant Judge Gardner granted Postell's motion for a evidentiary hearing, she failed to inform Postell he would have a limited scope of discovery.

70.     On February 28, 2020, Defendant Judge Gardner granted Defendant McDonald's motion to withdraw as attorney before issuing an order on Postell's motion to disqualify.

71.     On March 3, 2020, Defendant Judge Gardner granted Defendant Khondoker's motion to withdraw as attorney before issuing an order on Postell's motion to disqualify.

72.     On February 25, 2021, Judge Gardner failed to promptly notify Postell to give him an opportunity to be heard at her sixteen minute ex parte communications hearing.

73.     Without procedural and substantive due process such as a notice, Judge Gardner violated Postell's due process rights.

74.     Pursuant to the Fourteenth Amendment of the Constitution of the United States, Postell have the right to equal protection of law.

75.     At all time relevant to this Original Complaint for Damages, Defendant Judge Gardner were acting under the colors of state law and in her official and individual capacities as a  District Judge.

76.     The actions of the Defendant Judge Gardner in her use of these practices constituted a deliberated violation of Plaintiff Postell's constitutional rights under the Fourteenth Amendment and under the guarantees set out in 42 U.S.C. § 1983.

77.     As a direct and proximate result of Defendant Judge Gardner's due process violation, Plaintiff Postell suffered personal and emotional distress, mental pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. Plaintiff Postell is entitled to all relief allowed under the law.

78.     Defendant Judge Gardner's actions as alleged herein were intentional, malicious, willful and wanton and/or in reckless disregard for Plaintiff's constituionally protected rights, thereby entitling Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff prays as follows:

A.  For a declaratory judgment that Defendant Judge Gardner is in violation of the laws of the State of Georgia and the United States of America;

B.  For issuance of preliminary and permanent injunction restraining Defendant Judge Gardner from acting in furtherance in both cases were Plaintiff Postell is a party under the Fourteenth Amendment to the United States Constitution;

C.  That the Plaintiff be awarded damages in excess of one hundred thousand dollars ($100,000.00);

D.  That the Plaintiff be awarded punitive damages in excess of one hundred fifty thousand dollars ($150,000.00).

E.  Award Plaintiff reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

F.  That the Plaintiff be granted a jury trial; and

G.  Any other relief as this Court may deem just and proper.

## COUNT II

*Discrimination under 42 U.S.C. § 1983 and violation of the Fourteenth Amendment of the United States Constitution Against US District Judge Leslie Abrams Gardner*

79.    Plaintiff Postell repeats, re-alleges, and incorporates by reference the allegations in paragraphs 1 – 67 of this Original Complaint for Damages as fully set forth herein.

80.    Plaintiff Postell is the victim of discrimination of the basis of him not being an attorney and was treated differently than other parties in both cases; *Crandall O.*

*Postell v. The City of Cordele, et al.,* 1:19-CV-00148-LAG and *Mathew Whitest, et al. v. Crisp County Georgia Board of Education, et al.,* 1:17-CV-00109-LAG.

81.     Defendant Judge Gardner is liable for the differential treatment and hostility towards Plaintiff because she controlled her actions and/or in-actions affecting Plaintiff Postell and failed to take prompt and adequate remedial action or took no action at all to prevent the abuse to Plaintiff.

82.     Defendant Judge Gardner conducting court without due process constitutes intentional discrimination and unlawful practices base upon Plaintiff not being an attorney in violation of Plaintiff's constitutional rights under the Fourteenth Amendment and under the guarantees set out in 42 U.S.C. § 1983.

83.     As a direct and proximate result of Defendant Judge Gardner's unlawful conduct described above, Plaintiff suffered personal and emotional distress, mental pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

84.     The Defendant Judge Gardner's action as alleged herein were intentional, malicious, willful and wanton and/or in reckless disregard for Plaintiff's constitutionally protected rights, thereby entitling Plaintiff to an award of punitive damages.

WHEREFORE, the Plaintiff prays as follows:

A.     For a declaratory judgment that Defendant Judge Gardner is in violation of the laws of the State of Georgia and the United States of America;

B.   For issuance of preliminary and permanent injunction restraining Defendant Judge Gardner from acting in furtherance in both cases were Plaintiff Postell is a party under the Fourteenth Amendment to the United States Constitution;

C.   That the Plaintiff be awarded damages in excess of one hundred thousand dollars ($100,000.00);

D.   That the Plaintiff be awarded punitive damages in excess of one hundred fifty thousand dollars ($150,000.00).

E.   Award Plaintiff reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

F.   That the Plaintiff be granted a jury trial; and

G.   Any other relief as this Court may deem just and proper.

## COUNT III

*Breach of Contract*
*Against American Civil Liberties Union of Georgia,*
*American Civil Liberties Union Foundation, Inc., M. Laughlin McDonald,*
*Sean J. Young, Aklima Khondoker, The Law Office of Bryan L. Sells, LLC. Bryan L.*
*Sells, Mathew Whitest, and Curtis Lucas, Jr.*

85.   Plaintiff Postell repeats, re-alleges, and incorporates by reference the allegations in paragraphs 1 – 37 of this Original Complaint for Damages as fully set forth herein.

86.   Approximately May of 2017, Plaintiff Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, George Whitehead, Jr., Mathew Whitest, and Curtis Lucas, Jr. entered into an agreement with the ACLU and attorneys who work with the

ACLU who would represent the Plaintiffs solely for the purposes of challenging the at-large method of electing the Crisp County, Georgia Board of Education.

87.    Defendants McDonald, Young, Khondoker, Sells attempted to force Plaintiff Postell into agreeing with the BOE's plan, Postell refused.

88.    On May 24, 2018, without legal causes the Defendants McDonald, Young, Khondoker, Sells filed their motion to withdraw as counsel. And on May 16, 2019, Defendant Judge Gardner granted said motion.

89.    Defendants Whitest and Lucas breached their agreement with the remaining Plaintiffs. They chose to jump side and agree with the BOE and Defendant attorneys with the ACLU.

WHEREFORE, the Plaintiff prays as follows:

A.    For a declaratory judgment that Defendants are in violation of the laws of the State of Georgia and the United States of America;

B.    For issuance of preliminary and permanent injunction restraining Defendants from acting in furtherance in case of; *Mathew Whitest, et al. v. Crisp County Georgia Board of Education, et al.,* 1:17-CV-00109-LAG.

C.    That the Plaintiff be awarded damages in excess of five million dollars ($5,000,000.00);

D.    That the Plaintiff be awarded punitive damages in excess of one million dollars ($1,000,000.00).

E.    Award Plaintiff reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

F.    That the Plaintiff be granted a jury trial; and

G.    Any other relief as this Court may deem just and proper.

Dated this 7th day of December, 2021.

Respectfully submitted,

CRANDALL O. POSTELL,pro se
311 1st Avenue West, Apt. A
Cordele. Georgia 31015
(229)322-7667

 

P.O. Box 77208 Atlanta, Georgia 30357 | 770-303-8111| info@acluga.org

*This form and communications related to this Matter are confidential and privileged*

## ENGAGEMENT AGREEMENT

I, CRANDALL Office Poskell request that the ACLU of Georgia Foundation and the ACLU Foundation Voting Rights Project (both referred to as, "ACLU"), along with other attorneys who work with the ACLU, represent me solely for the purposes of challenging the at-large method of electing the Crisp County, Georgia Board of Education (referred to as the "Matter").

ACLU agrees to undertake any and all actions that, in ACLU's professional knowledge and expertise, is necessary to represent me before any local, state or federal court or agency, in all trials, appeals, and other related matters at no cost, for the purposes of this Matter, until the Matter is concluded. In the course of taking action on my behalf in this Matter, the ACLU may request that other attorneys assist in representation. Any attorneys that are called to assist will be at no cost to me. I agree that the ACLU take action according to their professional knowledge and expertise.

It will be the judgment of the ACLU, a collective nonprofit organization, to fairly and vigorously provide legal representation for clients to enforce their civil and constitutional rights. In civil, administrative, or legislative proceedings, the ACLU will provide and pay for legal representation until a fair resolution has been offered or achieved, or when, in the judgment of the attorneys on this Matter, no further legal action is recommended. The ACLU is not making any promises or assurances for any particular outcome. I understand that I am not promised a particular outcome in this action.

If I am offered a settlement, on the condition that the ACLU waive the right to attorney's fees and costs, it is ultimately my decision whether to accept or reject the offer, even if it includes a fee waiver. I agree to consider my best interests, the interests of this Matter, and the costs to the long-term viability of the ACLU and its continued ability to further provide quality legal services, prior to making a settlement decision.

The potential of creating precedent will have an impact beyond any relief that any one client may obtain. It is the ultimate decision of the ACLU to either pursue or abandon legal theories that, in its professional knowledge and expertise, believes will be beneficial or detrimental to me, this Matter or ACLU's interests. This may include taking no action or filing an action on behalf of some clients and not others. I understand that the ACLU has the discretion and the final determination as to whether to accept or decline any offers of settlement.



P.O. Box 77208 Atlanta, Georgia 30357 | 770-303-8111| info@acluga.org

*This form and communications related to this Matter are confidential and privileged*

I will be called to provide documents and/or testimony related to this Matter under oath. There will be a timeline that documents and/or testimony must be provided, and I agree to adhere to those timelines and be forthcoming and honest with the information that I provide.

I understand that communication is critical in this Matter, and I agree that I will not discuss with anyone from the court or press about this Matter without the ACLU's prior consent.

The ACLU will keep the information that I share in furtherance of this Matter confidential, however if I do share any information with anyone, confidentiality is lost. Because confidentiality is broken once I share information about this Matter with others, I agree not to reveal to anyone, whether in person or remotely, any confidential information, including legal strategies, about this Matter. I agree to keep all information about this Matter confidential and will not share any information about this Matter with anyone.

During the course of representation, the ACLU may find it necessary to publish information on this Matter to the media or store information in an archival library, with both available to the public. Publishing this Matter to the media may help further the legal strategies of the ACLU. Storing information in a library reduces the financial burden of keeping files. In both instances, the information published may contain personal or confidential information, except for information that the ACLU received during litigation. However, any information that I request be kept private for legal reasons or would be embarrassing or would likely be detrimental to me will not be included. I agree that non-privileged information and information that will not be used in legal action and does not embarrass or burden me may be published to the media or stored in an archival library.

I will not be responsible for paying fees related to interviews, depositions or hearings associated with this Matter, and will only be reimbursed for any costs associated with parking when traveling to provide a sworn statement or documentation.

Either party may terminate this agreement for any lawful reason after giving reasonable written notice and receiving court approval. I agree to fully cooperate with the ACLU in this Matter and will provide notice to the ACLU should I decide that I will terminate this agreement.



P.O. Box 77208 Atlanta, Georgia 30357 | 770-303-8111| info@acluga.org

*This form and communications related to this Matter are confidential and privileged*

This Engagement Agreement is the entire agreement between the parties and can only be amended in writing. By signing below, the parties to this agreement indicate that they understand all of the terms and agree to be bound by its terms.

ACCEPTANCE: I accept and agree to be bound by the terms of this Agreement I agree to retain the ACLU and its Attorneys upon the terms stated in this agreement. I have received a duplicate of this agreement for my records.

RANDALL Otez Postll
[Print Name]

Date: May 4, 2017

[Print Title, if applicable]

[Print Name of Organization, if applicable]

[Signature]

311 1st Ave. West, Apt A
[Address]

229- 699 - 0487
[Phone number]

copngu@ blackvoices.com
[Email]

Page 3 of 4



P.O. Box 77208 Atlanta, Georgia 30357 | 770-303-8111| info@acluga.org

*This form and communications related to this Matter are confidential and privileged*

**APPROVED:**

Date: _____

Andrea Young
ACLU Foundation of Georgia, Inc.
P.O. Box 77208
Atlanta, GA 30357

Date: _____

Dale Ho
Director, Voting Rights Project
American Civil Liberties Union Foundation, Inc.
125 Broad St.
New York, NY 10004
Telephone: (212) 549-2693

February 25, 202_

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION
CASE NUMBER 1:17-CV-109

Exhibit
Unit
F

| | | |
|---|---|---|
| WHITEST, ET AL., | ) | |
| | ) | |
| PLAINTIFFS | ) | FEBRUARY 25, 2021 |
| VS. | ) | |
| | ) | ALBANY, GEORGIA |
| CRISP COUNTY GEORGIA BOARD | . | |
| OF EDUCATION, ET AL., | ) | |
| | . | |
| DEFENDANTS | ) | |
| | ) | |

TELEPHONE CONFERENCE
BEFORE THE HONORABLE LESLIE ABRAMS GARDNER
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS          BRYAN L. SELLS, ATTORNEY
                            LAW OFFICE OF BRYAN SELLS
                            P.O. BOX 5493
                            ATLANTA, GEORGIA  31107-0493
                            and
                            SEAN JENGWEI YOUNG, ATTORNEY
                            ACLU OF GEORGIA
                            P.O. BOX 77208
                            ATLANTA, GEORGIA  30357


FOR THE DEFENDANTS          BRYAN P. TYSON, ATTORNEY
                            LOREE ANNE PARADISE, ATTORNEY
                            TAYLOR ENGLISH DUMA
                            1600 PARKWOOD CIRCLE, SUITE 200
                            ATLANTA, GEORGIA  30339
                            and
                            PHILLIP L. HARTLEY, ATTORNEY
                            HARBEN, HARTLEY & HAWKINS
                            340 JESSE JEWELL PARKWAY, SUITE 750
                            GAINESVILLE, GEORGIA  30501

February 25, 2021

1      (Commencing at 2.03 p.m.)

2          THE COURT: We're here for a telephone conference

3   regarding the motion to enter a consent order in Whitest, et al.

4   versus Crisp County Board of Education, et al., 1:17-CV-109.

5   Would counsel please announce your appearances.

6          MR. SELLS: Your Honor, this is Bryan Sells for the

7   Whitest plaintiffs.

8          MR. TYSON: Bryan Tyson and Loree Anne Paradise for the

9   Crisp County Board of Elections.

10         THE COURT: Okay. I missed who spoke after Bryan Sells

11  and before Mr. Tyson.

12         MR. YOUNG: I'm sorry. Sean Young, with the Whitest

13  plaintiffs.

14         THE COURT: All right. I'm having this call recorded,

15  so I'm going to ask that each time you speak, that you state

16  your name for the court reporter, okay?

17     So the reason I asked you all to jump on this call quickly

18  is because I received the proposed consent order.

19     Did a new party just join the call?

20         MR. HARTLEY: This is Phil Hartley. I apologize for

21  being a few minutes late. I had pulled off the road, and there

22  was a little incident when I did that, but I'm here now.

23         THE COURT: Well, hopefully you're safe. We're just

24  getting started.

25     And we have a court reporter on the line, so I ask that each

MINDY MARTIN, FOCR
229-405-6818

February 25, 2021

1   time you speak, you state your name.

2      So the reason for the call is I received the parties'
3   consent order. My question, my first question for you all is,
4   have you been in touch with what we call the Postell plaintiffs
5   in this matter? Did they consent to it? Because I don't, as
6   just a threshold issue, I don't see how I can enter a consent
7   order if we have parties to the matter who aren't party to the
8   consent.

9          MR. SELLS: Your Honor, this is Bryan Sells. As we
10  noted on the certificate of service, yes, we have served the
11  Postell plaintiffs, if we want to call them that, all the pro se
12  plaintiffs. And I have not heard from them at all, but I would
13  respectfully disagree with your suggestion that you can't enter
14  a settlement agreement among fewer than all the parties. I
15  think that actually it's fairly routine.

16         THE COURT: Well, it is fairly routine -- just to make
17  sure we're all on the same page, I certainly could enter a
18  settlement agreement among you all. I cannot enter a consent
19  order among you all because a consent order is more than a
20  settlement agreement. It's well established in the Eleventh
21  Circuit that a consent order is broader than a settlement
22  agreement and requires monitoring and continued action by the
23  court and order by the court.

24     And I can point you to the cases which clearly state that
25  where -- in fact, there's an Eleventh Circuit case, Reynolds v

February 25, 2021

1  Roberts, 251 F.3d 1350, "Lacking the consent of all the parties,
2  the court obviously lacked the power to enter a decree
3  purportedly based on consent for 'it is the parties' agreement
4  that serves as the source of the court's authority to enter any
5  judgment at all.'"

6     So that is where my area of concern is. If you all just
7  want to settle the case amongst you all and have the case
8  remaining with the pro se defendants and the -- I mean the pro
9  se plaintiffs and the defendants, then I'm happy. You can
10 submit your settlement and enter the settlement. But as you
11 refer to a sunset order and as there's a role for the Court to
12 play, that I'm not allowed to do without consent of the parties.

13       MR. SELLS: Yes, your Honor. This is Brvan Sells. I
14 would like the opportunity to look at the case that you just
15 cited and to brief the issue with the Court. I still
16 respectfully disagree with your interpretation. And I would
17 point to the Stovall vs. City of Cocoa case, which we cite in
18 our motion, but it's at 117 F.3d 1238. That is a 1997 case
19 involving a disputed consent decree in a voting rights actions.

20    And, you know, not having had the opportunity to review that
21 Reynolds case, I think maybe it would be in everyone's best
22 interest to take a look at that and brief the Court, but we
23 can't settle this case without continuing court intervention
24 because of the nature of the way the settlement is structured,
25 number one, but -- because we don't get the data until much

February 25, 2021

1    later on.

2        THE COURT:   Right.  And so I'm going to kind of
3    short-circuit you because that was going to the second issue,
4    the Stovall case.  The cases -- Reynolds v. Roberts is the 2001
5    Eleventh Circuit, which, of course, cites to Stovall, which I
6    think is slightly nuanced because the main issue in Stovall,
7    although it does have some bearing on this, was one of the
8    parties signed onto the agreement and then tried to withdraw
9    from it, and the court said that the party who intentionally
10   withdrew from it was bound by the agreement.  And so I think we
11   have a slightly different posture here.

12       But certainly I'm happy for you all to brief it.  But then
13   even going with -- assuming that we can move forward with what
14   you all have put forward, then we have the issue of, I think,
15   you know, Stovall, I'm required to at least have an evidentiary
16   hearing and make findings of fact and conclusions of law to
17   support entering this.  I can't simply sign off on it without
18   doing some further inquiry.

19       So, again, I'm not saying no to it, but I want to make sure
20   that it's appropriate.  I want to make sure that it's fair to
21   all the parties and going to stand up to any type of review.
22   And it would seem one of the issues, if we're going to go
23   through briefing it, one of the things we need to be thinking
24   is, when you brief it, whether or not we can have a portion of
25   the parties consenting.

February 25, 2021

1    I would also like you to brief what the standard of review
2    would need to be in this case.  Is this a matter in line, I
3    believe, with Stovall, that, you know, is there a question, is
4    there a strict scrutiny question or is there a different line
5    of -- or a different standard of review that the Court would
6    need to apply in this case.

7        So if you all want to, if you, when briefing that, please
8    both touch on whether the Court can move forward with only
9    partial consent of the plaintiffs and also what the standard of
10   review would need to be.  Just looking through it and going over
11   it, I just don't know that I can do this without an evidentiary
12   hearing and making certain findings of fact to have an
13   appropriate reference on which to rule.

14       MR. SELLS:  Your Honor, this is Bryan Sells again.  I
15   agree wholeheartedly with you that the Court would need to have
16   an evidentiary hearing.  I think that the scope of that hearing
17   will need to depend on the extent to which there are objections
18   to the consent decree, which we don't know at this point, but if
19   Mr. Postell wants to put on evidence, for example, to show under
20   City of Stovall -- I mean City of Cocoa that the proposed
21   consent decree is, I think the phrase is unreasonable, unfair,
22   or unlawful, then we would meet that evidence with other
23   evidence and legal argument, but it's a little premature to say
24   what the standard of review would be at this point without
25   knowing what the arguments are on -- in opposition to the

 1    consent decree.

 2          THE COURT:  Well, I guess to a certain degree, I think,
 3    looking at it -- in some ways I think you're correct, but I
 4    don't know that that we're completely foreclosed.  I'm trying to
 5    be somewhat proactive so that when we set this, when we get
 6    ready to go forward -- but it may be that you all do not believe
 7    that this is -- if you're going to make the assertion that
 8    there's not an issue of -- like, if you're going to make the
 9    assertion that it's race neutral, then, you know, even without
10    objection or -- you know, then there's no need.  But if, for
11    example, you all are proceeding under a different theory other
12    than race neutrality, then even without objection, the standard
13    would be strict scrutinv.  So I don't know exactlv where you all
14    are coming from, how you're going to present it.

15          And so what I just want to make sure, from at least you all,
16    that the Court is prepared and understands -- because I've
17    gotten the draft and even the order doesn't touch -- the order
18    is, the proposed order is, I would say, light on what the
19    Eleventh Circuit would need to uphold it, uphold this consent
20    decree.  So I need more from what your perception is.

21          Is this a matter that, for example, the districts that you
22    all are proposing, is one of those so heavily African American
23    as to it would even lean towards helping get an African American
24    on the commission -- board?  Because if that is, in fact, the
25    case, then your purpose of drawing it that way -- I don'L

1    believe that any objection has been raised to that issue -- if
2    that's apparently there, then the Court needs to speak to it.
3              MR. SELLS:  Well, your Honor, we haven't drawn the
4    districts yet.  That's the, you know, the beauty, if you will,
5    of the settlement.  Maybe it's its fault as well.  But I think
6    we can confidently say that all of the districts in the consent
7    decree are race neutral because there aren't any -- there may
8    come a time when we draw the districts and evaluate to determine
9    whether those districts are racial gerrymanders or not, but
10   that's not really before the Court at this point.

11             THE COURT:  Well, I guess that is something I would
12   like for you to put in front of me because one of the questions
13   I have is, is it your intent to create districts that would
14   increase diversity.  So at this time, if your intent is not to
15   do that, then state that.  And I don't have to address that at
16   this point.  But if that is your intent, then I'll have to --
17   because I wasn't party to your discussions.  I don't know what
18   you're trying to do.  I know the overall goal is to, I don't
19   want to say the overall goal is to necessarily diversity.  The
20   overall goal is to have a fair representation.  But if it is you
21   have different districts, which is how these things look, then
22   that is a question I would need to address.

23        Now, if you're going to say it is our intent to have our
24   districts and it's our intent to draw them to increase racial
25   diversity, then state it and we can move on from there.

1        MR. SELLS: This is Bryan Sells again. Your Honor, I
2   think, I think maybe it would help if I step back and explain
3   how the consent decree, how we envision it playing out.

4        THE COURT: Well, I think sort of what I don't want to do
5   right now, I don't -- I'm slightly uncomfortable having a
6   substantive conversation without having, quote, unquote, all of
7   the parties to the action on the phone. For all intents and
8   purposes, this is an ex parte conversation.

9        Now, when it was a matter of me checking to see had you
10  talked to the other parties and what were the details of the
11  agreement that the Whitest defendants -- or plaintiffs and the
12  defendants have reached, that's one thing. And I think that's
13  appropriate to have with you all. But going into the
14  substantive issues without giving at least all the parties an
15  opportunity to be on the call, I wouldn't do that.

16       So, really, I just want to tee up what the Court's concerns
17  are and give you an opportunity to provide some supplemental
18  briefing to support the consent, your motion, and then we'll go
19  from there. Because I need to have a -- if I need to have a
20  full-on hearing, then we'll do it, but I really don't want to
21  get more substantive than we are now.

22       MR. HARTLEY: This is Phil Hartley, representing the
23  school district. I understand what your Honor has said. And I
24  think in the briefing we can set out for your Honor our
25  understanding of what steps would have to be taken, the hearing,

1   et cetera, and maybe what notice would go out before that.  And

2   I think that, together with the legal briefing, you know, I

3   think gives your Honor what you're asking for.

4          THE COURT:  That's precisely what I would like, yes.

5          MR. HARTLEY:  I think we can do that.

6          MR. SELLS:  And, your Honor, this is Bryan Sells again.

7   Perhaps the vehicle for that briefing would be in response to

8   Mr. Postell's objection to the motion.  Or in reply, I suppose,

9   to Mr. Postell's objection to the motion.

10         THE COURT:  So I'm ordering the parties to provide

11   supplemental briefing to the level that Mr. Hartley just

12   described now.  I don't know what Mr. Postell is going to do.  I

13   don't know that Mr. Postell has -- I know that he's been served,

14   but I don't know where he is and what his position on this is.

15   The briefing that I want and quite honestly what Mr. Hartley has

16   just kind of outlined, I think it's appropriate now.

17         And before I move forward with a hearing, as Mr. Hartley

18   pointed out, how we would go about what notice may be required,

19   what would need to be established, if a hearing needs to be

20   had -- this is a motion that you put forth.  What's in the

21   motion is -- the Court doesn't find a sufficient basis to make a

22   ruling or even to move forward.  So I'm going to ask the parties

23   to supplement their motions to the subjects that we've

24   discussed.  And I guess my next question is how long do you need

25   to do it?

February 25, 2021

1      MR. SELLS: I'm looking at my schedule, your Honor.
2  Give me just a moment.

3      THE COURT: Uh-huh.

4      MR. SELLS: Your Honor, is three weeks reasonable?

5      THE COURT: I would think so, yes, sir. And we, just

6  to be on the safe side -- feel free to file it faster, but I'll

7  give you all 30 days to file that supplement.

8      MR. HARTLEY: Thank you, your Honor.

9      THE COURT: Thank you all so much for jumping on here.

10     Is there anything else we needed to address? Those are just

11  the questions and the thoughts that were in my head on this. Is

12  there anything else you want the Court to be considering in the

13  interim?

14     MR. SELLS: I don't believe so, your Honor. Again,

15  this is Bryan Sells. Will you be entering an order to direct us

16  for this briefing?

17     THE COURT: No. There will be a minute sheet that says

18  what I directed you to do.

19     MR. SELLS: Okay. All right.

20     MR. HARTLEY: Thank you, your Honor.

21     THE COURT: All right. Thank you. You all have a

22  great day.

23     (Concluding at 2:19 p.m.)

24

25

February 25, 2021

CERTIFICATE

I HEREBY CERTIFY THAT THE

FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF THE PROCEEDINGS.

/S/ Mindy Martin                    May 4, 2021
MINDY MARTIN, RMR, FCRR
UNITED STATES COURT REPORTER
Albany, Georgia  31701
Phone:  229-405-6818