**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

MATHEW WHITEST, *et al.*,                    :
                                             :
      Plaintiffs,                            :
                                             :
v.                                           :     CASE NO.: 1:17-CV-109 (LAG)
                                             :
CRISP COUNTY SCHOOL DISTRICT, *et al.*,  :
                                             :
      Defendants.                            :
                                             :

## ORDER

     This case began in June 2017, when Plaintiffs Mathew Whitest and Curtis Lucas, Jr. (collectively, the Whitest Plaintiffs), and *pro se* Plaintiffs Crandall Postell, Sarah Williamson, Kenya Williamson, Betty Jean Williamson, and George Whitehead Jr. challenged the at-large method of election for the Crisp County Board of Education. (Doc. 1). The Complaint alleged that the at-large election system diluted the voting strength of Black voters in Crisp County in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. (*Id.* ¶¶ 3, 27–28). After attempts to settle the case failed, the Whitest Plaintiffs moved for summary judgment. (Doc. 110). Defendants, the Crisp County School District and the Crisp County Board of Elections and Registration, conceded liability and stipulated to facts satisfying the three *Gingles* preconditions and several Senate factors. (*See* Docs. 110-1, 113); *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). On August 20, 2021, the Court concluded that the at-large election method of electing all six members of the Board of Education violated Section 2 and granted the Whitest Plaintiffs' Motion for Summary Judgment. (Doc. 119 at 9). The Court found that the at-large election system denied Black voters in Crisp County an equal opportunity to participate in the electoral process and to elect candidates of their choice. (*Id.*).

     To ensure no future elections would be conducted under the unlawful at-large plan, the Court outlined a timeline and procedures for implementing an appropriate remedial

plan for the 2022 elections. (*Id.* at 9–11). In accordance with well-established precedent that the legislature should have the first opportunity to create a remedial plan, the Court directed Defendants to confer with Crisp County's legislative delegation about devising a remedy for the 2022 elections. (*Id.* at 10); *see Lawyer v. Dep't of Just.*, 521 U.S. 567, 576 (1997). At a status conference held on December 8, 2021, the Court directed the Parties to prepare and submit proposed remedial plans by January 7, 2022. (Doc. 131 at 22:24–23:1). The Court subsequently received two proposed remedial plans. Defendant Crisp County School District submitted draft legislation, House Bill (HB) 956, that it developed in coordination with the Georgia Legislative Reapportionment Office. (Doc. 133 at 2–4; Doc. 136-1). This legislation would decrease the size of the Board to five members, with one to be elected at-large and four to be elected by district—two from the City of Cordele and two from the rest of Crisp County. (Doc. 133 at 2). Plaintiff Postell submitted a plan maintaining the size of the Board and creating six single-member districts. (Doc. 135 at 2–3). The Whitest Plaintiffs stated that they do not oppose the School District's remedial proposal but noted that their "non-opposition is entirely dependent on the Georgia General Assembly actually adopting the School District's plan." (Doc. 134 at 1).

After reviewing the Parties' submissions, the Court raised several concerns about the Parties' proposals and the lack of supporting materials provided. (Doc. 143 at 2–4). In an Order issued February 9, 2022, and during the subsequent hearing on the matter, the Court explained that the Parties' filings omitted essential information needed for the Court to fulfill its obligation to "ensure that any remedial plan it enacts provides a full and complete remedy of the Section 2 violation and that the remedial plan itself complies with the Constitution, the Voting Rights Act, and applicable case law." (*Id.* at 2 (citing *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 996 F. Supp. 2d 1353, 1358–59 (N.D. Ga. 2014)); Doc. 148 at 3:4–5:16). Further, the Court expressed concern that the School District's proposal appeared to maintain the at-large election method for all five Board of Education members and merely imposed residency requirements on four of the five members. (Doc. 143 at 1 n.1; Doc. 148 at 4:14–24). At the hearing held on February 15, 2022, the Court identified documentation and information the Parties needed

to submit so the Court could adequately evaluate their proposals; and all Parties agreed to supplement their filings. (Doc. 148 at 41:25–46:22). The Court issued an Order that afternoon detailing the specific materials needed from each Party. (Doc. 147 at 1–2).

Thereafter, the School District submitted a copy of the General Assembly's website showing the dates for actions taken by the House and Senate on HB 956, which the School District described as "the history of the bill." (Doc. 149 at 1; Doc. 149-1). The School District also provided a general description of the process followed in drawing the legislation and the criteria applied but did not include the supporting documents the Court requested, such as transcripts, meeting minutes, or other records of hearings, discussions, debates, or other relevant testimony related to the plan. (Doc. 149 at 2–4; Doc. 147 at 2). In response to the Court's concern about the legislation's language suggesting all five Board members would be elected at-large, the School District provided a copy of draft legislation, HB 1430, clarifying "that the four district, one at-large plan requires that a board member be elected to represent each of the four districts and only by the voters within each of those districts." (Doc. 149 at 1; Doc. 149-2). HB 1430 was passed by the Georgia General Assembly and signed into law by the Governor of Georgia on March 22, 2022.[1] The legislation does not become fully effective, however, unless the voters of Crisp County vote to rescind a 1956 local amendment to the Georgia Constitution that providing for the current at-large election method for the Board of Education. (*See* Doc. 113 at 1–2; Doc. 133 at 4). A referendum on this matter will be held on May 24, 2022, in conjunction with the primary election. (Doc. 149 at 2; Doc. 150 ¶ 4).

Defendant Crisp County Board of Elections and Registration also provided transcripts of testimony given by officials from the Georgia Secretary of State's office about the timeline and process for November 2022 election preparations. (Docs. 150-1, 150-2). Given the Court's ruling that the existing at-large election method violates federal law and the fact that a legislative remedy was passed by the Georgia General Assembly, the Board of Elections and Registration advised the Court that it started updating the

---

[1]    *See* GA. GEN. ASSEMB., *HB 1430*, https://www.legis.ga.gov/legislation/62329 (last visited Apr. 28, 2022). Copies of HB 1430, district maps, and a population summary by district are attached to this Order.

voter-registration database with the HB 1430 districts so that the May primaries may be conducted under the new plan and the legislation may be promptly implemented for future elections upon approval by the voters. (Doc. 149 at 2 n.1; Doc. 150 ¶ 4). The Board of Elections and Registration also represented that it would "send new precinct cards to all Crisp County voters indicating their new districts for the School District and will have maps for the new School District boundaries available in its office for candidates and voters to review." (Doc. 150 ¶ 5).

Despite agreeing to do so, Plaintiff Postell did not submit any of the requested information or documentation for his proposed remedial plan. (*See* Doc. 151). During the February 15, 2022 hearing, Plaintiff Postell told the Court that he could provide the data used to create his remedial proposal within one week (Doc. 148 at 8:2–12, 39:20–40:7, 41:14–17); but, in his supplemental filing, he stated that "the time allowed [was] not enough." (Doc. 151 at 1). Plaintiff Postell has since made no effort to provide this information to the Court. The Whitest Plaintiffs provided a declaration from Dr. Stephen Popick, an expert in the statistical analysis of voting behaviors, who analyzed the School District's remedial proposal. (Docs. 144, 144-1).

The Parties each ask the Court to take certain actions in connection with their remedial proposals. Plaintiff Postell urges the Court to adopt his "six district plan that would give [B]lack people in [Crisp County] four districts out of six." (Doc. 151 at 1–2). The Whitest Plaintiffs ask for an order "(1) enjoining the defendants from conducting any further elections under the unlawful at-large election plan; (2) enjoining the defendants from failing to conduct a primary election . . . [on] May 24, 2022, in accordance with the plan set out in House Bill 956," as modified by House Bill 1430, and "(3) retaining jurisdiction to enter such further relief as necessary to ensure that school board elections go forward in 2022 under a plan that complies with the Voting Rights Act." (Doc. 144 at 5). The School District requests "that the Court only enter an injunction enforcing its previous liability order as it relates to the 1956 local constitutional amendment and the subsequent implementing legislation." (Doc. 149 at 6).

4

**LEGAL STANDARD**

Congress passed the Voting Rights Act "to help effectuate the Fifteenth Amendment's guarantee that no citizen's right to vote shall 'be denied or abridged . . . on account of race, color, or previous condition of servitude." *Voinovich v. Quilter*, 507 U.S. 146, 152 (1993) (omission in original) (quoting U.S. Const. amend. XV, § 1); *see also Chisom v. Roemer*, 501 U.S. 380, 403 (1991) ("Congress enacted the Voting Rights Act of 1965 for the broad remedial purpose of 'rid[ding] the country of racial discrimination in voting.'" (alteration in original) (citation omitted)). Section 2 of the Voting Rights Act was designed to "eradicat[e] voting practices that 'minimize or cancel out the voting strength and political effectiveness of minority groups'" and prohibits "*all* States and their political subdivisions from maintaining any voting 'standard, practice, or procedure' that 'results in a denial or abridgement of the right . . . to vote on account of race or color.'" *Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 479 (1997) (omission in original) (first quoting S. Rep. No. 97-417, at 28 (1982); and then quoting 42 U.S.C. § 1973(a) (current version at 52 U.S.C. § 10301(a))). "The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Gingles*, 478 U.S. at 47.

If a Section 2 violation is established, the court has an obligation to "'exercise its traditional equitable powers to fashion the relief so that it completely remedies' the § 2 violation and 'fully provides equal opportunity for minority citizens to participate and to elect candidates of their choice.'" *Ga. State Conf. of NAACP*, 996 F. Supp. 2d at 1358 (quoting *United States v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1437–38 (11th Cir. 1988)). The Supreme Court has repeatedly emphasized, however, that "redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt." *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (plurality opinion) (citations omitted); *see North Carolina v. Covington*, 138 S. Ct. 2548, 2554–55 (2018) (per curiam) ("[S]tate legislatures have primary jurisdiction over legislative reapportionment." (alteration in original) (quoting *White v. Weiser*, 412 U.S. 783, 795

(1973)); *Perry v. Perez*, 565 U.S. 388, 392 (2012) (per curiam) ("Redistricting is 'primarily the duty and responsibility of the State.'" (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). Consequently, when a district court finds that an election scheme violates the Voting Rights Act, it should allow the state legislature a "reasonable opportunity" to remedy the violation "by adopting a substitute measure rather than . . . devise and order into effect its own plan." *Lawyer*, 521 U.S. at 576 (omission in original) (quoting *Wise*, 437 U.S. at 540). Because "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court," a state's "redistricting responsibility should be accorded primacy to the extent possible when a federal court exercises remedial power." *Id.* (citation omitted). "[J]udicial relief becomes appropriate only when a legislature fails to re[district] according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Upham v. Seamon*, 456 U.S. 37, 41 (1982) (per curiam) (quoting *Weiser*, 412 U.S. at 794–95).

When the state takes the opportunity to cure a Section 2 violation and enacts a new election plan, that legislative remedy is owed substantial deference. *Wise*, 437 U.S. at 540; *Tallahassee Branch of NAACP v. Leon County*, 827 F.2d 1436, 1438 (11th Cir. 1987) ("[F]ederal courts must defer to the judgment of a state legislative body in the area of reapportionment. Principles of federalism and common sense mandate deference to a plan which has been legislatively enacted."). If the legislative remedy does not violate the Constitution or the Voting Rights Act, the "district court is 'not free . . . to disregard the political program of' a state legislature on other bases." *Covington*, 138 S. Ct. at 2554–55 (omission in original) (quoting *Upham*, 456 U.S. at 42). The "district court is precluded from substituting even what it considers to be an objectively superior plan for an otherwise constitutionally and legally valid plan that has been proposed and enacted by the appropriate state governmental unit." *Seastrunk v. Burns*, 772 F.2d 143, 151 (5th Cir. 1985) (citing *Wise*, 437 U.S. at 540–41). Nevertheless, "any remedy sanctioned by the Court must completely remedy 'the prior dilution of minority voting strength and provide equal opportunity for minority citizens to participate and to elect candidates of their choice.'" *United States v. Osceola County*, 474 F. Supp. 2d 1254, 1256 (M.D. Fla. 2006) (quoting

*White v. Alabama*, 74 F.3d 1058, 1069 (11th Cir. 1996)); *see also Dillard v. Crenshaw County*, 831 F.2d 246, 252 (11th Cir. 1987) (The "[c]ourt cannot authorize an element of an election proposal that will not with certitude *completely* remedy the Section 2 violation."). The court must also ensure that the remedial plan "itself conform[s] with Section 2." *Dallas Cnty. Comm'n*, 850 F.2d at 1437–38 (quoting *Dillard*, 831 F.2d at 249).

## DISCUSSION

As explained above, the Court previously found that the at-large method for electing all six Crisp County Board of Education members violated Section 2 of the Voting Rights Act and now turns to the question of remedy. The School District and the Whitest Plaintiffs assert that HB 1430 cures the Section 2 violation because this remedial plan provides Black voters a meaningful opportunity to elect candidates of their choice in two of the five districts, which is roughly proportional to the Black share of Crisp County's voting-age population. (Doc. 133 at 2–4; Doc. 141 at 2; Doc. 144 at 3); *see Johnson v. De Grandy*, 512 U.S. 997, 1000 (1994) (holding that proportionality "is a relevant fact in the totality of circumstances" analysis when evaluating "whether members of a minority group have 'less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice'"). The materials submitted by the School District and Dr. Popick's report, submitted by the Whitest Plaintiffs, support this position.

According to the U.S. Census Bureau's 2020 census data, Crisp County has a total population of 20,128 persons. (Doc. 133-1 at 4; Doc. 144-1 at 18). The census results show that 9,892 (49.15%) persons in the County are non-Hispanic White, 9,194 (45.68%) are Black (alone or in combination), and 1,042 (5.18%) are members of other racial or ethnic groups. (Doc. 144-1 at 25). Crisp County has a total voting-age population of 15,570 persons, of whom 8,248 (52.97%) are non-Hispanic White, 6,603 (42.41%) are Black, and 719 (4.62%) are members of other racial or ethnic groups. (*Id.* at 33). To assess "whether Black voters would have a meaningful opportunity to elect candidates of their choice" to the Board of Education, Dr. Popick analyzed the 2020 census results and data on current voter registration and voter turnout in the 2018 and 2020 general elections. (*Id.* at 5). Specifically, he used a "census-block equivalency file for the defendant's remedial

proposal and geocoded census block information for each voter [to] assign[] each voter to the remedial district in which the voter resides and aggregated voters by district to determine turnout by race for the 2020 and 2018 general elections." (*Id.* at 5–6). The results of Dr. Popick's analysis of the School District's proposed districts, as detailed in HB 1430, are summarized in Table 1. (*Id.* at 6; Doc. 144 at 3).

**Table 1: Analysis of Voter Registration and Turnout in
School District's Remedial Proposal/HB 1430**

| District | Black Voting-Age Population | Black Registration | 2018 Black Turnout | 2020 Black Turnout |
|---|---|---|---|---|
| 1 | 13.68% | 10.37% | 9.00% | 9.22% |
| 2 | 65.11% | 66.77% | 61.52% | 61.09% |
| 3 | 62.94% | 61.22% | 54.44% | 54.22% |
| 4 | 31.67% | 26.08% | 21.02% | 20.09% |
| 5 (at-large) | 42.38% | 39.11% | 32.11% | 31.62% |

Dr. Popick estimates that Black voters are a majority of the registered voters in two of the districts described in HB 1430: Districts 2 and 3. (Doc. 144-1 at 6). In both districts, Black voters were also a majority of the turnout in the 2018 and 2020 general elections. (*Id.*). Thus, Black voters would likely constitute a majority of both registration and turnout in at least two of the districts in the School District's remedial plan. (*Id.*). Dr. Popick therefore concludes that "Black voters would have a meaningful opportunity to elect candidates of their choice in two (40%) of the five districts included in the defendant's remedial proposal, a share that is roughly proportional to the Black share of [Crisp] [C]ounty's voting-age population." (*Id.* at 6–7).

Plaintiff Postell objects to the School District's proposed plan on three grounds. First, Plaintiff Postell contends that reducing the number of Board seats hurts Black voters because "the smaller the districts, the better the . . . chance [for Black voters] to put in office who they want in office." (Doc. 148 at 36:4–6). He argues that Defendants have

"produced no evidence . . . to support changing from six districts to five districts." (Doc. 151 at 1). The School District responds that a five-member Board "is consistent with the vast majority of school boards in the State and avoids the potential for a tie vote and a stalemate on the governing body of the school district on some important issue." (Doc. 136 at 3). Although "federal courts may not *mandate* as a section 2 remedy that a state or political subdivision alter the size of its elected bodies," the Court is not necessarily precluded "from *approving* a change in the size of the electoral body as part of a legislatively enacted Section 2 remedy." *Osceola County*, 474 F. Supp. 2d at 1255–56 (first citing *Holder v. Hall*, 512 U.S. 874, 881 (1994) (plurality opinion); and then citing *Nipper v. Smith*, 39 F.3d 1494, 1532 (11th Cir. 1994) (en banc)).

Second, Plaintiff Postell argues that the School District's plan is not a complete remedy because this lawsuit was brought to challenge the Board's at-large election method, but HB 1430 retains one at-large Board seat. (Doc. 148 at 34:16–20). The Supreme Court has explained that "when district courts are forced to fashion apportionment plans, single-member districts are preferable to large multi-member districts." *Connor v. Johnson*, 402 U.S. 690, 692 (1971) (per curiam). But when a remedial plan is developed by the state legislature, "at-large districts that do not offend either the constitution or the statute should not be rejected in the court-ordered remedy." *Edge v. Sumter Cnty. Sch. Dist.*, 775 F.2d 1509, 1512 (11th Cir. 1985) (per curiam) (citation omitted); *cf. Dallas Cnty. Comm'n*, 850 F.2d at 1438 ("[A]t-large procedures that are discriminatory in the context of one election scheme are not necessarily discriminatory under another scheme." (citing *Dillard*, 831 F.2d at 250)). A state "legislature's 'freedom of choice to devise substitutes for an apportionment plan found'" to violate Section 2 "'should not be restricted beyond the clear commands' of federal law," and the Court cannot reject the legislature's policy choices on other grounds. *Covington*, 138 S. Ct. at 2554–55. Plaintiff Postell has not pointed to—and the Court has not identified—any evidence in the record indicating that the HB 1430 violates either the Voting Rights Act or the Constitution by retaining one at-large district. Accordingly, the Court must defer to the legislative judgments the School District's plan reflects. *See Voinovich*, 507 U.S. at 156; *Leon County*, 827 F.2d at 1438.

Plaintiff Postell also objects to the School District's plan because it provides for only two Black-majority districts, while his six-district plan would purportedly create four majority-Black districts. (Doc. 151 at 1–2). Without support, he asserts that the districts in his plan would have the demographic makeup summarized in Table 2. (Doc. 135 at 2–3).

**Table 2: Racial Makeup of Total Population
in Plaintiff Postell's Proposed Districts**

| District | White | Black | Hispanic | Asian | Native American |
|----------|-------|-------|----------|-------|-----------------|
| 1 | 33% | 64% | 2% | 0% | 1% |
| 2 | 46% | 48% | 4% | 2% | 1% |
| 3 | 17% | 76% | 6% | 1% | 1% |
| 4 | 27% | 67% | 3% | 2% | 1% |
| 5 | 86% | 9% | 3% | 1% | 1% |
| 6 | 86% | 11% | 1% | 1% | 1% |

Plaintiff Postell failed to provide any of the documents or information the Court instructed him to submit in support of his plan, including the methods or data he used to develop these districts and the demographic makeup of the voting-age population, rather than total population, in his proposed districts. (*See* Doc. 147 at 1). Even if a majority of the total population in four of Plaintiff Postell's six proposed districts were Black, that does not mean that Black voters make up a majority of the voting-age population in those districts or that Black voters would have a realistic opportunity of electing their candidate of choice under the plan. *See Ga. State Conf. of NAACP*, 996 F. Supp. 2d at 1360 n.7 (collecting cases holding that voting-age population, not total population, is the proper statistic when evaluating majority-minority districts under Section 2). Thus, there is no basis for concluding that Plaintiff Postell's plan would remedy the existing Section 2 violation. Moreover, a "complete" Section 2 remedy does not necessarily guarantee Black voters in Crisp County the opportunity to elect a certain number of members for the Board of Education. Both the Supreme Court and the Eleventh Circuit have explained that "the

right guaranteed by [S]ection 2 'is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race.'" *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1308 (11th Cir. 2020) (quoting *De Grandy*, 512 U.S. at 1014 n.11, 1020).

The Georgia General Assembly has taken the opportunity to remedy the Section 2 violation by enacting legislation reconstituting the composition and election of the Crisp County Board of Education. This legislation, HB 1430, responds to the Court's finding of a Section 2 violation by eliminating the at-large election scheme for all six Board members and establishing a five-member Board with four single-member districts and one at-large district. While the Parties have not fully complied with the Court's Orders and have failed to provide all the information requested, upon consideration of the current record and given the timing of the upcoming primary and general elections, the Court concludes that the School District's plan, HB 1430, is an appropriate remedy for the existing Section 2 violation and provides Black voters in Crisp County an equal opportunity to participate and to elect their candidates of choice to the Board of Education. Nothing in the record before the Court at this time suggests that HB 1430 violates the Constitution or the Voting Rights Act. The Court will therefore defer to this legislative remedy and avoid "intrud[ing] upon state policy any more than [is] necessary" to remedy the Section 2 violation. *See Upham*, 456 U.S. at 41–42 (citation omitted); *Covington*, 138 S. Ct. at 2554–55.

## CONCLUSION

Having previously concluded that the existing at-large election method for the election of Crisp County Board of Education members violates Section 2 of the Voting Rights Act, the Court hereby **ENJOINS** the Crisp County School District and Board of Elections and Registration from conducting any future Crisp County Board of Education elections under that unlawful plan. The remedial plan proposed by the School District and enacted by the Georgia General Assembly, HB 1430, is **ADOPTED** as the interim remedial plan for the 2022 primary and general elections for the Crisp County Board of Education. Attached to this Order is a copy of HB 1430, as well as maps of the new district boundaries and a population summary by district that were provided by the School District.

This remedial plan shall remain in effect until the 1956 local amendment to the Georgia Constitution is rescinded by the voters of Crisp County and HB 1430 becomes fully effective. The Crisp County School District and Board of Elections and Registration are **ORDERED** to implement the remedial plan described in HB 1430 promptly and in accordance with the Constitution and laws of the United States. Except as modified by HB 1430 or this Order, all applicable federal, state, and local election-related laws shall remain in effect. The Court shall retain jurisdiction to enforce the provisions of this Order and for such further relief as may be appropriate.

      **SO ORDERED**, this 28th day of April, 2022.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

LC 47 1656/AP

House Bill 1430 (AS PASSED HOUSE AND SENATE)

By: Representative Williams of the 148th

# A BILL TO BE ENTITLED
## AN ACT

1  To reconstitute the Board of Education of Crisp County; to provide for legislative purpose;

2  to provide for the composition and election of said board; to provide for election districts;

3  to provide for terms of office; to provide for qualifications for office; to provide for

4  vacancies; to provide for meetings and quorums; to provide compensation; to provide for

5  continuation in office of current members; to provide for election and terms of office of

6  subsequent members; to provide for compensation of board members; to abolish the current

7  Board of Education of Crisp County on a date certain and shorten the terms of office of

8  certain members of such board; to provide for a referendum; to provide for effective dates;

9  to repeal a local constitutional amendment proposed by a certain resolution act; to repeal

10  specific acts; to repeal conflicting laws; and for other purposes.


11          BE IT ENACTED BY THE GENERAL ASSEMBLY OF GEORGIA:


12                                      **SECTION 1.**

13  The purpose of this Act is to repeal the 1956 amendment to the Constitution relating to the

14  merger of the independent school system of the City of Cordele and the school district in the

15  County of Crisp lying outside the corporate limits of said city into one school district and to

16  reconstitute the Crisp County Board of Education.

17                              **SECTION 2.**

18   (a)  The Board of Education of Crisp County shall be composed of five members to be

19   elected as provided in this Act.  In order to be elected as a member of the board from an

20   education district, a person must have resided in that district for at least 12 months prior to

21   election thereto and must receive a majority of the votes cast for such office in that district.

22   Only electors who are residents of that education district may vote for a member of the board

23   for that district.  At the time of qualifying for election as a member of the board from an

24   education district, each candidate for such office shall specify the education district for which

25   that person is a candidate.  A person elected as a member of the board from an education

26   district must continue to reside in that district during the person's term of office or such office

27   shall thereupon become vacant.  The at-large member of the board from District 5 may reside

28   anywhere within the Crisp County School District and must receive a majority of the votes

29   cast for such office in all of that district.

30   (b)  For the purpose of electing members of the board of education, the Crisp County School

31   District shall be divided into five education districts.  Districts 1, 2, 3, and 4 shall be and

32   correspond to those four numbered districts described in Appendix A attached to and made

33   a part of this Act and further identified as 'User: Crisp SB Plan Name: CrispSB-2022 Plan

34   Type: Local'.  Education District 5 shall be composed of the entire geographic area of the

35   Crisp County School District.

36      (c)(1)  For the purposes of such plan:

37      (A)  The term 'VTD' shall mean and describe the same geographical boundaries as

38            provided in the report of the Bureau of the Census for the United States decennial

39            census of 2020 for the State of Georgia.  The separate numeric designations in a district

40            description which are underneath a VTD heading shall mean and describe individual

41            Blocks within a VTD as provided in the report of the Bureau of the Census for the

42            United States decennial census of 2020 for the State of Georgia; and

43    (B)   Except as otherwise provided in the description of any district, whenever the

44          description of any district refers to a named city, it shall mean the geographical

45          boundaries of that city as shown on the census maps for the United States decennial

46          census of 2020 for the State of Georgia.

47    (2)   Any part of the Crisp County School District which is not included in any district

48    described in subsection (b) of this section shall be included within that district contiguous

49    to such part which contains the least population according to the United States decennial

50    census of 2020 for the State of Georgia.

51    (3)   Any part of the Crisp County School District which is described in subsection (b) of

52    this section as being included in a particular district shall nevertheless not be included

53    within such district if such part is not contiguous to such district.   Such noncontiguous

54    part shall instead be included within that district contiguous to such part which contains

55    the least population according to the United States decennial census of 2020 for the State

56    of Georgia

57    (d)   All members of the board who are elected thereto shall be nominated and elected in

58    accordance with Chapter 2 of Title 21 of the O.C.G.A., the "Georgia Election Code."   Each

59    member shall be elected by the voters of Crisp County registered and qualified to vote for

60    members of the General Assembly.


61                                        **SECTION 3.**

62    (a)   Except as provided in subsection (b) of this section, the term of each board member shall

63    be four years beginning on January 1 of the year following the election of the member.

64    (b)(1)   The terms of office of the initial members elected to represent Districts 1 and 2

65          and the at-large District 5 position shall be two years, beginning January 1, 2023, and

66          ending December 31, 2024.   Thereafter, all successors to such members shall serve

67          four-year terms.

LC 47 1656/AP

68     (2)  The initial terms of office of the members elected to represent Districts 3 and 4 shall

69     be four years, beginning January 1, 2023, and ending December 31, 2026.  Thereafter,

70     all successors to such members shall serve four-year terms.


71                   **SECTION 4.**

72 Any person, to be eligible for membership on the board, must have resided in Crisp County

73 for at least one year immediately preceding the date of the election and must reside in the

74 district from which he or she offers as a candidate for at least 12 months immediately

75 preceding the date of the election.


76                    **SECTION 5.**

77 In the event a person who represents an education district moves his or her residence from

78 such district, a vacancy shall exist for such district.  In the event of a vacancy on the board

79 for any reason other than the expiration of a term of office, the remaining members of the

80 board of education shall appoint a successor to serve until the next general election in which

81 members of the General Assembly are elected, in which election a successor shall be elected

82 to serve out the unexpired term of office in which the vacancy occurs; provided, however,

83 that, if a vacancy occurs within two years and 90 days of the expiration of the term of office,

84 the person appointed shall serve out the remainder of the term.


85                    **SECTION 6.**

86 (a)  At the first meeting of the board of education in January of each year, the board shall

87 elect a chairperson, who shall be eligible to succeed himself or herself.

88 (b)  A quorum of the board shall be three members.

89                              **SECTION 7.**

90  Each member of the board of education shall be compensated in the amount of $250.00 for

91  each day of attendance at meetings of the board and training sessions and conferences

92  approved by the board.

93                              **SECTION 8.**

94  (a)  Those members of the Board of Education of Crisp County who are serving as such on

95  the effective date of this Act and any person selected to fill a vacancy in any such office shall

96  continue to serve as such members until the member of the board elected pursuant to the

97  provisions of this Act take office on January 1, 2023.

98  (b)  The two members of the Board of Education of Crisp County who are serving as such

99  on the effective date of this Act whose terms expire on December 31, 2022, pursuant to an

100  Act providing for the merger of the existing independent school system of the City of

101  Cordele and the existing school districts in the County of Crisp lying outside the corporate

102  limits of said city, approved February 11, 1957 (Ga. L. 1957, p. 2066), as amended, shall

103  serve out the terms to which they were elected.

104  (c)  Except for members provided for in subsection (b) of this section, the terms of office of

105  the members of the Board of Education of Crisp County who are serving as such on the

106  effective date of this Act shall be shortened and shall end on December 31, 2022.

107                             **SECTION 9.**

108  Except as otherwise provided in this Act, the board of education shall be subject to all

109  constitutional and statutory provisions relative to county boards of education.

110                             **SECTION 10.**

111  The election superintendent of Crisp County shall call and conduct an election as provided

112  in this section for the purpose of submitting this Act to the electors of the Crisp County

113     School District for approval or rejection.  The election superintendent shall conduct that
114     election on the date of the 2022 general primary and shall issue the call and conduct that
115     election as provided by general law.  The election superintendent shall cause the date and
116     purpose of the election to be published once a week for two weeks immediately preceding
117     the date thereof in the official organ of Crisp County.  The ballot shall have written or printed
118     thereon the words:

119     "(  )  YES    Shall the Act be approved which revises and restates the law relating to  the
120                          Board of Education of Crisp County, shortens the terms of the current board
121        (  )  NO     of education, provides for the election of a new board of education, and
122                          repeals that constitutional amendment relating to the merger of the
123                          independent school system of the City of Cordele and the school district in
124                          the County of Crisp lying outside the corporate limits of said city, into one
125                          school district which was proposed by Resolution Act No. 20-64(e) of the
126                          1956 General Assembly (Ga. L. 1956, p. 111) and duly ratified at the 1956
127                          election?"

128     All persons desiring to vote for approval of the Act shall vote "Yes," and all persons desiring
129     to vote for rejection of the Act shall vote "No."  If more than one-half of the votes cast on
130     such question are for approval of the Act, then Sections 1 through 9 and Section 11 of this
131     Act shall become of full force and effect on July 1, 2022.  If the Act is not so approved or if
132     the election is not conducted as provided in this section, Sections 1 through 9 and Section 11
133     of this Act shall not become effective and this Act shall be automatically repealed on the first
134     day of July immediately following that election date.  The expense of such election shall be
135     borne by Crisp County.  It shall be the election superintendent's duty to certify the result
136     thereof to the Secretary of State.

137                          **SECTION 11.**

138  (a)  The constitutional amendment relating to the merger of the independent school system

139  of the City of Cordele and the school district in the County of Crisp lying outside the

140  corporate limits of said city into one school district, which was proposed by Resolution Act

141  No. 20-64(e) of the 1956 General Assembly (Ga. L. 1956, p. 111) and duly ratified at the

142  1956 election and continued in force and effect as part of the Constitution of the State of

143  Georgia by an Act approved February 18, 1987 (Ga. L. 1987, p. 3552), is hereby repealed.

144  (b) An Act providing for the merger of the independent school system of the City of Cordele

145  and the school districts in the County of Crisp lying outside the corporate limits of said city,

146  so as to constitute one school district or system coextensive with the limits of said county,

147  approved February 11, 1957 (Ga. L. 1957, p. 2066), is hereby repealed in its entirety, and all

148  amendatory acts thereto are likewise repealed in their entirety.

149  (c)    An Act to reconstitute the Board of Education of Crisp County, approved

150  February 17, 2022, (2022 HB 956, Act No. 408), is hereby repealed in its entirety.


151                          **SECTION 12.**

152  Except as otherwise provided in Section 10 of this Act, this Act shall become effective upon

153  its approval by the Governor or upon its becoming law without such approval.


154                          **SECTION 13.**

155  All laws and parts of laws in conflict with this Act are repealed.

22                                                              LC 47 1656/AP

156                              APPENDIX A


157   User:   Crisp SB

158   Plan Name:   CrispSB-2022

159   Plan Type:   Local


160   District   001

161     County Crisp GA

162     VTD ARABI

163       Block 010300:

164       2089  2090  2091  2092  2095  2096  2097  2098  2099  2100  2102  2103

165       2104  2105  2106  2107  2108  2109  2110  2111  2115  2116  2117  2118

166       Block 010500:

167       1000  1001  1002  1003  1004  1005  1006  1007  1008  1009  1010  1011

168       1012  1013  1014  1015  1016  1017  1018  1019  1020  1021  1022  1023

169       1024  1025  1026  1030  1031  1032  1033  1034  1035  1036  1037  1038

170       1039  1044  1045  1047  1048  1056  1057  1060  1061  1062  1063  1064

171       1065  1066  1067  1068  1069  1070  1071  1072  1073  1074  1075  1076

172       1077  1078  1079  1080  1081  1082  1083  1087  1088  1089  1090  1091

173       1092  1093  1094  1095  1098  2011  2012  2013  2014  2015  2018  2019

174       2020  2024  2025  2026  2027  2028  2031  2033  2034  2035  2036  2037

175       2038  2039  2040  2041  2042  2043  2044  2045  2046  2047  2048  2049

176       2050  2051  2052  2053  2056  2057  2058

177     VTD CORDELE

178       Block 010100:

179       1009  1010  1011  1012  1013  1014  1015  1016  1017  1018  1019  1020

180       1021  1022  1023  1024  1025  1026  1027  1028  1029  1030  1031  1032

| 181 | 1033 | 1034 | 1035 | 1036 | 1045 | 1046 | 1047 | 1050 | 1051 | 1052 | 1053 | 1054 |
| 182 | 1055 | 1056 | 1057 | 1058 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 |
| 183 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2016 | 2029 | 2030 | 2064 | | |

184    Block 010300:

| 185 | 1000 | 1001 | 1007 | 1008 | 1053 | 1055 | 1056 | 1072 | 1073 | 2011 | 2053 | 2069 |
| 186 | 2070 | 2071 | 2072 | 2073 | 2074 | 2075 | 2076 | 2077 | 2078 | 2079 | 2080 | 2081 |
| 187 | 2082 | 2112 | 2113 | 2114 | 2120 | | | | | | | |

188    Block 010400:

| 189 | 1000 | 1001 | 1002 | 1003 | 1004 | 1027 | 1029 | 1030 | 1034 | 1035 | 1036 | 1037 |
| 190 | 1038 | 1039 | 1040 | 1042 | 1043 | 1044 | 1045 | 1046 | 1047 | 1048 | 1049 | 1050 |
| 191 | 1051 | 1052 | 1053 | 1054 | 1055 | 1056 | 1057 | 1058 | 1059 | 1060 | 1061 | 1062 |
| 192 | 1063 | 1064 | 1065 | 1066 | 1067 | 1068 | 1069 | 1070 | 1076 | 1077 | 4001 | 4002 |
| 193 | 4004 | 4005 | 4009 | 4010 | 4011 | 4012 | 4013 | 4014 | 4047 | | | |

194    Block 010500:

| 195 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2029 |
| 196 | 2030 | 2032 | 2054 | 2055 | | | | | | | | |

197    VTD LISTONIA


198  District   002

199    County Crisp GA

200    VTD CORDELE

201    Block 010100:

| 202 | 1048 | 1049 | 1059 | 1060 | 1061 | 1063 | 1064 | 2014 | 2015 | 2017 | 2018 | 2019 |
| 203 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2031 | 2032 | 2033 |
| 204 | 2034 | 2035 | 2036 | 2037 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 | 2045 |
| 205 | 2046 | 2047 | 2048 | 2049 | 2050 | 2051 | 2052 | 2053 | 2054 | 2055 | 2056 | 2057 |
| 206 | 2058 | 2059 | 2060 | 2061 | 2062 | 2063 | 3000 | 3001 | 3002 | 3003 | 3004 | 3005 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 207 | 3006 | 3007 | 3008 | 3009 | 3010 | 3011 | 3012 | 3013 | 3014 | 3015 | 3016 | 3017 |
| 208 | 3018 | 3019 | 3020 | 3021 | 3022 | 3023 | 3024 | 3025 | 3026 | 3027 | 3028 | 3029 |
| 209 | 3030 | 3031 | 3032 | 3033 | 3034 | 3035 | 3036 | 3037 | 3038 | 3039 | 3040 | 3041 |
| 210 | 3042 | 3043 | 3044 | 3045 | 3046 | 3047 | 3048 | 3049 | 3050 | 3051 | 3052 | 3053 |
| 211 | 3054 | 3055 | 3056 | 3057 | 3058 | 3059 | | | | | | |

212    Block 010202:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 213 | 1041 | 2005 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2015 | 2016 | 2017 | 2018 |
| 214 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2026 | 2027 | 2028 | 2029 | 2030 | 2031 |
| 215 | 2033 | 2034 | 2038 | 2039 | 2040 | 2041 | 2042 | 2043 | 2044 | 2050 | 2051 | 3000 |
| 216 | 3001 | 3002 | 3003 | 3004 | 3005 | 3006 | 3007 | 3008 | 3009 | 3010 | 3011 | 3012 |
| 217 | 3013 | 3014 | 3015 | 3016 | 3017 | 3018 | 3019 | 3020 | 3021 | 3022 | 3023 | 3024 |
| 218 | 3025 | 3026 | 3027 | 3028 | 3029 | 3030 | 3031 | 3032 | 3033 | 3034 | 3035 | 3036 |
| 219 | 3037 | 3038 | | | | | | | | | | |

220    Block 010300:

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 221 | 1002 | 1003 | 1004 | 1005 | 1006 | 1009 | 1010 | 1011 | 1012 | 1013 | 1014 | 1015 |
| 222 | 1016 | 1017 | 1018 | 1019 | 1020 | 1021 | 1022 | 1023 | 1024 | 1025 | 1026 | 1027 |
| 223 | 1028 | 1029 | 1030 | 1031 | 1032 | 1033 | 1034 | 1035 | 1036 | 1037 | 1038 | 1039 |
| 224 | 1040 | 1041 | 1042 | 1043 | 1044 | 1045 | 1046 | 1047 | 1048 | 1049 | 1050 | 1051 |
| 225 | 1052 | 1054 | 1057 | 1058 | 1059 | 1060 | 1061 | 1062 | 1063 | 1064 | 1065 | 1066 |
| 226 | 1067 | 1068 | 1069 | 1070 | 1071 | 1074 | 3000 | 3001 | 3002 | 3003 | 3004 | 3005 |
| 227 | 3006 | 3007 | 3008 | 3009 | 3010 | 3011 | 3012 | 3013 | 3014 | 3015 | 3016 | 3017 |
| 228 | 3018 | 3019 | 3020 | 3021 | 3022 | 3023 | 3024 | 3025 | 3026 | 3027 | 3028 | 3029 |
| 229 | 3030 | 3031 | 3032 | 3033 | 3034 | 3035 | 3036 | 3037 | 3038 | 3039 | 3040 | 3041 |
| 230 | 3042 | 3043 | 3044 | 3045 | 3046 | 3047 | 3048 | 3049 | 3050 | 3051 | 3052 | 3053 |
| 231 | 3054 | 3055 | 3056 | 3057 | 3058 | 3059 | 3060 | 3061 | 3062 | 3063 | 3064 | 3065 |
| 232 | 3066 | 3067 | 3068 | 3069 | 3070 | 3071 | 3072 | 3073 | 3074 | 3075 | 3076 | 3077 |
| 233 | 3078 | 3079 | | | | | | | | | | |

22                                                                      LC 47 1656/AP

234   District   003

235    County Crisp GA

236     VTD CORDELE

237      Block 010201:

238        3002  3005  3006  3007  3008  3009  3010  4000  4001  4002  4003  4005

239        4006  4007  4008  4009  4010  4011  4013  4014  4015  4016  4017  4018

240        4019  4020  4025  4026  4027  4028  4029  4030  4031  4032  4033  4034

241        4035

242      Block 010400:

243        1005  1006  1007  1008  1009  1010  1011  1012  1013  1014  1015  1016

244        1017  1018  1019  1020  1021  1022  1023  1024  1025  1026  1028  1031

245        1032  1033  1041  1071  1072  1073  1074  1075  2000  2001  2002  2003

246        2004  2005  2006  2007  2008  2009  2010  2011  2012  2013  2014  2015

247        2016  2017  2018  2019  2020  2021  2022  2023  2024  2025  2026  2027

248        2028  2029  2030  2031  2032  2033  2034  2035  2036  2037  2038  2039

249        2040  2041  2042  3000  3001  3002  3003  3004  3005  3006  3007  3008

250        3009  3010  3011  3012  3013  3014  3015  3016  3017  3018  3019  3020

251        3021  3022  3023  3024  3025  3026  3027  3028  3029  3030  3031  3032

252        3033  3034  3035  3036  4000  4003  4006  4007  4008  4015  4016  4017

253        4018  4019  4020  4021  4022  4023  4024  4030  4048  5000  5001  5002

254        5003  5004  5005  5006  5007  5008  5009  5010  5011  5012  5013  5014

255        5015  5016  5017  5018  5019  5020  5021  5022  5023  5024  5025  5026

256        5027  5028  5029  5030  5031  5032  5033  5034  5035  5036  5037  5038

257        5039  5040  5041  5042  5043  5044  5045  5046  5047  5048  5049  5050

258        5051

LC 47 1656/AP

259   District   004

260     County Crisp GA

261       VTD ARABI

262        Block 010500:

263           1027  1028  1029  1040  1041  1042  1043  1046  1049  1050  1051  1052

264           1053  1054  1055  1058  1059  1084  1085  1086  1096  1097  2016  2021

265           2022  2023

266       VTD CONEY

267       VTD CORDELE

268        Block 010201:

269           1000  2000  2001  2002  2003  2004  2005  2006  2007  2008  2009  2010

270           2016  2017  2079  2080  3000  3001  3003  3004  3011  3012  3013  3014

271           3015  3016  3017  3018  3019  3020  3021  3022  3023  3024  3025  3026

272           3027  3028  3029  3030  3031  3032  3033  3034  3035  3036  3037  3038

273           3039  3040  3041  3042  3043  3044  3045  3046  3047  3048  3049  3050

274           3051  3052  3053  3054  3055  3056  3057  3058  3059  3060  3061  3062

275           3063  3064  4004  4012  4021  4022  4023  4024

276        Block 010202:

277           1000  1001  1002  1025  1026  1027  1028  1029  1030  1031  1032  1033

278           1034  1037  1038  1039  1040  1045  2000  2001  2002  2003  2004  2006

279           2013  2014  2025  2032  2035  2036  2037  2045  2046  2047  2048  2049

280        Block 010400:

281           4025  4026  4027  4028  4029  4031  4032  4033  4034  4035  4036  4037

282           4038  4039  4040  4041  4042  4043  4044  4045  4046

283        Block 010500:

284           2017

285       VTD JAMESTOWN





# Draft - Crisp County School Board Districts 002 & 003

Client: Crisp
Plan: crispsb-draft-2021
Type: Local SB

Case 1:17-cv-00109-LAG Document 133-1 Filed 01/07/22 Page 3 of 4

# Draft - Crisp County School Board Districts

Client: Crisp
Plan: crispsb-draft-2021
Type: Local SB

User: **Crisp**
Plan Name: **crispsb-draft-2021**
Plan Type: **Local**

# Population Summary

Thursday, November 18, 2021                                                                                                                     3:56 PM

**Summary Statistics:**

| | |
|---|---|
| Population Range: | 4,992 to 5,087 |
| Ratio Range: | 0.02 |
| Absolute Range: | -40 to 55 |
| Absolute Overall Range: | 95 |
| Relative Range: | -0.79% to 1.09% |
| Relative Overall Range: | 1.89% |
| Absolute Mean Deviation: | 27.50 |
| Relative Mean Deviation: | 0.55% |
| Standard Deviation: | 34.46 |

| District | Population | Deviation | % Devn. | [18+_Pop] | [% 18+_Pop] | [% NH_Wht] | [% NH_Blk] | [% Hispanic Origin] | [% NH_Asn] | [% NH_Ind] | [% NH_Hwn] | [% NH_Oth] | [% NH_2+ Races] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 5,087 | 55 | 1.09% | 4,057 | 79.75% | 80.4% | 13.19% | 3.11% | 0.47% | 0.1% | 0% | 0.1% | 2.63% |
| 002 | 5,027 | -5 | -0.10% | 3,732 | 74.24% | 24.93% | 66.5% | 4.69% | 0.6% | 0.1% | 0% | 0.24% | 2.94% |
| 003 | 4,992 | -40 | -0.79% | 3,689 | 73.9% | 28.67% | 62.8% | 2.96% | 2.26% | 0.04% | 0.08% | 0.36% | 2.82% |
| 004 | 5,022 | -10 | -0.20% | 4,092 | 81.48% | 62.09% | 33.29% | 1.83% | 0.26% | 0.12% | 0% | 0.58% | 1.83% |

**Total:**          **20,128**
**Ideal District:**      **5,032**