[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 22-11826

Non-Argument Calendar

_____

MATTHEW WHITEST,
CURTIS LUCAS, JR.,

                                      Plaintiffs-Appellees,

CRANDALL POSTELL,

                                      Plaintiff-Appellant,

*versus*

CRISP COUNTY SCHOOL DISTRICT,
BECKY PERKINS,
in her official capacity as Elections' Supervisor
of the Crisp County Board of Elections and
Registration,
JUSTIN POSEY,
in his official capacity as a member of the

2                  Opinion of the Court                  22-11826

Crisp County Board of Education,
DR ELIZABETH MADDOX,
in her official capacity as a member of the
Crisp County Board of Education,
LELEE PHINNEY,
in her official capacity as a member of the
Board of Education of Crisp County, et al.,

                                                               Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:17-cv-00109-LAG

_____

Before WILSON, JORDAN, and LAGOA, Circuit Judges.

PER CURIAM:

       On June 14, 2017, Crandall Postell and numerous co-plaintiffs, represented by Bryan L. Sells and ACLU-affiliated attorneys, filed a lawsuit against the Crisp County School District and the Crisp County Board of Elections and Registration (BOE) challenging the existing at-large election method as a violation of Section 2 of the Voting Rights Act 1965, 52 U.S.C. § 10301. Early in the litigation, Plaintiffs found themselves at odds in their pursuit of an appropriate remedy. This misalignment reached an impasse.

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 3 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 3 of 14

22-11826               Opinion of the Court                3

Because Plaintiffs could not resolve their disagreement, the district court allowed Plaintiffs to split their efforts and pursue their interests separately. The ACLU withdrew from representing Plaintiffs in their entirety and continued to represent two plaintiffs, Mathew Whitest and Curtis Lucas Jr. (referred to as, Whitest Plaintiffs). Postell, on behalf of himself and four other plaintiffs, proceeded with the litigation pro se.

Postell now brings this consolidated appeal challenging numerous district court orders. The first order devised a remedy to the violation of Section 2 of the Voting Rights Act (VRA) and required the Crisp County School District and BOE to adopt a legislatively enacted remedial plan. The remaining orders being challenged on appeal concern Plaintiffs' disagreement and the granting and denial of numerous motions filed throughout the course of the litigation in an attempt to cure alleged harms resulting from the split.

After careful review, we find that the district court did not abuse its discretion in adopting the legislative remedy, nor did the district court abuse its discretion in ruling on all challenged motions. We first address the Section 2 remedy, before turning to a review of the various motions.

### I.   Voting Rights Act

In 2017, Plaintiffs brought a complaint alleging that the at-large election system used by the BOE violated Section 2 of VRA by diluting the voting strength of Black voters in Crisp County. At the time, the system consisted of six at-large members. According

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 4 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 4 of 14

4                          Opinion of the Court                     22-11826

to Plaintiffs, the at-large system made it difficult for Black voters to elect the candidates of their choosing.

In February 2018, the parties filed a consent motion to refer the case to mediation, which the district court granted. Defendants did not admit liability but proposed a remedy for the alleged violation. This remedy presented a plan with four single-member districts and one at-large district. According to this plan, two of the single-member districts would contain a Black majority. Whitest Plaintiffs and their attorneys supported this plan, with modifications. Postell opposed this remedy and supported a six-member district plan.

In February 2021, Whitest Plaintiffs and Defendants filed a joint motion for entry of a consent order, recommending that the court adopt the plan involving four single-member districts and one at-large district. Whitest Plaintiffs moved for summary judgment in July 2021, stating that Defendants did not contest liability. Defendants stipulated to the preconditions for a vote-dilution claim under Section 2 and stipulated that the at-large method lacked proportionality. Whitest Plaintiffs then proposed a remedial plan that included ordering Defendants to confer with Crisp County's legislative delegation to determine whether the Georgia General Assembly could address the issue in time for the 2022 elections. Defendants responded, seeking to join Whitest Plaintiffs in their motion for summary judgment.

In August 2021, the district court determined that there was a clear Section 2 violation, finding that there was no genuine issue

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 5 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 5 of 14

22-11826                Opinion of the Court                5

of material fact as to whether Black voters in Crisp County had less opportunity than white voters to elect candidates of their choice to the Board of Education, and granted Whitest Plaintiffs' motion for summary judgment.

The district court issued an order requesting that all parties confer and file a joint report within two weeks of the order identifying a date by which a remedy or interim remedy would need to be in place for the 2022 election under the new plan.

In December 2021, the district court directed the parties to prepare and submit proposed remedial plans. Postell submitted a plan with six single-member districts. Whitest Plaintiffs submitted draft legislation—House Bill 956 and House Bill 1430—that mirrored Defendants' previously suggested remedy, outlining a four-one plan whereby there would be four single-member districts and one at-large member. The Georgia General Assembly passed HB 1430 and the bill was signed into law in March 2022.

Following the bill's passage, the district court issued an order in which it recognized HB 1430 as an appropriate remedy for the existing Section 2 violation. The district court held that the bill would be adopted, subject to approval from Crisp County voters. In doing so, the district court rejected Postell's six-member plan, finding that he had not provided the requisite information ensuring that his proposal would remedy the Section 2 violation.

### a. Standard of Review

Mootness is a question of law we review de novo. *Hall v. Sec'y, Ala.*, 902 F.3d 1294, 1297 (11th Cir. 2018). A case is rendered

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 6 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 6 of 14

6                     Opinion of the Court                22-11826

moot and must be dismissed if and where events occur during litigation that deprive the court of its ability to provide meaningful relief. *United States v. Georgia*, 778 F.3d 1202, 1204 (11th Cir. 2015).

Prior to adopting a remedial plan intended to cure a Section 2 violation, it is important for courts to inquire as to whether the plan at issue "completely remedies the prior dilution of minority voting strength and fully provides equal opportunity for minority citizens to participate and to elect candidates of their choice." *United States v. Dall. Cnty. Comm'n,* 850 F.2d 1433, 1438 (11th Cir. 1988) (quoting S. Rep. No. 417, 97th Cong., 2d Sess. 31, *reprinted in* 1982 U.S. Code Cong. & Adm.News 177, 208).

In the presence of an alleged Section 2 violation, "[p]rinciples of federalism and common sense mandate deference to a plan which has been legislatively enacted." *Tallahassee Branch of NAACP v. Leon Cnty.*, 827 F.2d 1436, 1438 (11th Cir. 1987). District courts should "afford a reasonable opportunity for the legislature to meet constitutional requirements" while devising its own substitute plan. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978). Still, deference to the legislature does not equate to blanket approval. In adopting any remedy—even a plan proposed and enacted by the state—courts must ensure that the new plan is also valid under Section 2. *Dall. Cnty. Comm'n,* 850 F.2d at 1437–38.

### b. Discussion

The district court did not abuse its discretion in adopting HB 1430, a legislatively enacted plan. In deciding whether to adopt the legislative remedy at issue, the district court clearly explained that

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 7 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 7 of 14

22-11826               Opinion of the Court                    7

HB 1430 was an appropriate remedy because it provides Black voters an equal opportunity to participate in elections and elect their candidates of choice.[1] *See Wise*, 437 U.S. at 540 (explaining that district courts are entitled to adopt a legislative plan as its remedy of choice in the presence of a Section 2 violation). Nothing in the record supported a finding that HB 1430 violated the Constitution or the VRA.

Our finding that the district court did not abuse its discretion also leads us to conclude that Postell's appeal is not moot. Postell appropriately challenged the district court's chosen remedy, which so happened to be a legislatively enacted plan. The legislative remedy did not deprive the district court of devising meaningful relief; the legislative remedy was adopted as the meaningful relief. *See Georgia*, 778 F.3d at 1204.

## II. Motions

On appeal, Postell also challenges numerous district court rulings on motions filed throughout the course of litigation. All challenged motions stemmed from tensions that emerged between Postell and his co-plaintiffs during the initial mediation with Defendants. The timeline and events concerning all motions follows.

When Judge Gardner first referred this case to mediation, she required the parties to issue a status report on the results within

---

[1] Courts should exert caution when reviewing multi-member or at-large voting schemes because they may "operate to minimize or cancel" the voting strength of racial minorities. *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986) (quoting *Burns v. Richardson*, 384 U.S. 73, 88 (1966)).

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 8 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 8 of 14

8                   Opinion of the Court                22-11826

fourteen days of the mediation. Once issued, the status report noted that Postell refused to engage in meaningful mediation, which prevented the remaining plaintiffs from exploring a mutually agreeable remedy with Defendants. After repeated efforts to resolve their differences, attorneys for Whitest Plaintiffs moved to withdraw as counsel for Postell, citing a "fundamental disagreement" between Postell and Whitest Plaintiffs. In response, Postell filed a motion for sanctions against former counsel. The motion for sanctions was based in part on Postell's belief that counsel knew of Postell's positions on all case-related issues and disclosed said positions in the joint status report, in violation of the Georgia Rules of Professional Conduct.

In September 2018, Postell filed a motion for an evidentiary hearing on the motions to withdraw and his motion for sanctions. The motions to withdraw were granted. The district court granted an evidentiary hearing as to the motion for sanctions, which was held in July 2019 and the motion was subsequently denied. In June 2019, shortly prior to the evidentiary hearing, Postell moved to drop Whitest Plaintiffs from the suit while simultaneously moving to disqualify their attorneys. This consolidated motion was denied in August 2020.

In August 2021, Postell filed a motion for Judge Gardner to recuse herself for illegal and discriminatory acts. He argued that Judge Gardner was biased toward Whitest Plaintiffs, discriminated against him because of his pro se status, and violated his due-process rights based on its rulings. The alleged bias stemmed from the

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 9 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 9 of 14

22-11826                Opinion of the Court                9

fact that Judge Gardner's sister is Stacey Abrams, a prominent Georgia politician and voting rights activist who has collaborated with the ACLU. Postell alleges that this connection manifested in Judge Gardner's desire to protect Abrams's interests with the ACLU. Postell filed a second motion for recusal in September 2021, arguing that the district court failed to rule on his previous motion, violating his constitutional right to due process.

In December 2021, Postell filed a third motion for recusal. This third motion was filed alongside a Motion to Stay. In March 2022, the district court issued an order denying all of Postell's motions for recusal and the motion to stay.[2] The following analysis addresses all motions on appeal, in the order in which they were filed.

### a. Motions to Withdraw as Counsel

We review decisions regarding an attorney's motion to withdraw as counsel for abuse of discretion. *See Mekdeci v. Merrell Nat. Lab'ys*, 711 F.2d 1510, 1521–22 (11th Cir. 1983). This court gives significant deference to the district court's interpretation and application of local rules. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1302 (11th Cir. 2009). In doing so, this court will defer to the district court's grant of a motion to withdraw as counsel provided a showing of good cause. *Mekdeci*, 711 F.2d at 1521–22.

The district court did not abuse its discretion in granting the various motions to withdraw put forth by Postell's former counsel.

---

[2] The motion to stay is not challenged by Postell on appeal.

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 10 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 10 of 14

10                          Opinion of the Court                    22-11826

We rely on the district court's well-reasoned explanation for granting the motions to withdraw as counsel. The district court relied on Local Rule 83.1.4 of the Middle District of Georgia which states that "an attorney may withdraw from representation if there is a 'compelling reason to withdraw.'" M.D. Ga. L.R. 83.1.4. The district court found that each motion at issue here was supported by compelling reasons to withdraw. Postell's former counsel moved to withdraw in part because of the previously discussed disagreement between Postell and his co-plaintiffs. The district court found that continued representation of Postell would prevent counsel from providing "sincere legal recommendations" to Whitest Plaintiffs.

A later motion was brought by another attorney who moved to withdraw from this case because of a change of employment; a separate motion was brought because the attorney filing had decided to retire. Both reasons are wholly unrelated to the subject of this lawsuit. We consequently cannot say that the district court abused its discretion in granting the various motions to withdraw as counsel.

### b. Motions to Disqualify Counsel and Motions for Sanctions[3]

Decisions regarding motions to disqualify counsel fall within the district court's interpretation of the rules of ethics and are

---

[3] While filed separately, the motions to disqualify counsel and the motions for sanctions are reviewed together here as they both fall under a similar legal standard.

reviewed de novo, while the applicable findings of fact are reviewed for clear error. *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 380 F.3d 1331, 1338 (11th Cir. 2004); *see also Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1557–58 (11th Cir. 1997). The party bringing a motion to disqualify bears the burden of proving the grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). The imposition of sanctions similarly fall within the district court's inherent power and are reviewed for an abuse of discretion. *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1310 (11th Cir. 2021).

Rule 1.9 of the Georgia Rules of Professional Conduct requires courts to consider whether a lawyer's interests in a case would prove materially adverse to the interests of any of the involved parties, particularly where former clients are involved. Ga. R. Prof. Conduct 1.9(a)–(b). Meanwhile under Rule 1.6, "[a] lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, or are required by these rules or other law, or by order of the court." Ga. R. Prof. Conduct 1.6(a).

Here, the district court did not err in applying the Georgia Rules of Professional Conduct, nor in denying Postell's motion to disqualify Whitest Plaintiffs' attorneys. Although the attorneys

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 12 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 12 of 14

12                    Opinion of the Court                    22-11826

formerly represented Postell, the district court found that the interests of both parties were not "materially adverse." See Ga R. Prof Conduct 1.9(a). While Postell and Whitest Plaintiffs did disagree as to what would be the most effective and appropriate remedy, both parties agreed that Defendants were in violation of Section 2. The district court found the disagreement pertaining to the appropriate remedy neither materially adverse to Postell's underlying interests nor compelling enough to override Whitest Plaintiffs' counsel of choice, which we have stated should only be done sparingly. *See In re Bellsouth Corp.*, 334 F.3d at 961.

Further, the district court did not abuse its discretion in denying Postell's motion to sanction his former counsel because, as the district court properly found, the attorneys did not violate any ethical obligations owed to Postell. The information at issue here was disclosed in a status report pursuant to a district court order—conduct that explicitly falls under an exception carved out by Rule 1.6 of the Georgia Rules of Professional Conduct. To the extent that Postell could argue that the attorneys divulged too much information in this status report, the disclosure did not rise to a level where sanctions would be appropriate, nor did it rise to a level where we could confidently overrule the district court and find an abuse of discretion in denying the motion. We therefore affirm the district court's denial of sanctions.

### c. Motion to Drop Whitest Plaintiffs

We review the district court's decision on a motion to dismiss a party for an abuse of discretion. *Fritz v. Am. Home Shield*

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 13 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 13 of 14

22-11826                Opinion of the Court                13

*Corp.*, 751 F.2d 1152, 1154 (11th Cir. 1985). We find that the district court did not abuse its discretion in denying Postell's motion to drop Whitest Plaintiffs. The district court clearly explained that dropping the parties was not appropriate here because all plaintiffs shared the same claim. Keeping the suit together was found to promote judicial economy and prevented Postell, Whitest Plaintiffs, and Defendants from litigating the matter in separate actions. We therefore affirm the district court on this issue as well.

### d. Motions for Recusal

This court reviews decisions concerning recusals for an abuse of discretion. *United States v. Curtin*, 78 F.4th 1299, 1309 (11th Cir. 2023). A party may move to disqualify a judge where that judge has a personal bias or prejudice against said party or in favor of any adverse party. 28 U.S.C. § 144. Meanwhile, § 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [themselves] in any proceeding in which [] impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *see also United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004). The identified impartiality must also generally stem from extrajudicial sources; any conduct stemming from the judicial context must demonstrate pervasive bias. *See Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002).

Additionally, because ex parte communications are generally not tolerated while adjudicating the merits of a case, this court may consider the presence of ex parte communications when ascertaining a judge's impartiality. *Vining v. Runyon*, 99 F.3d 1056,

Case 1:17-cv-00109-LAG   Document 181   Filed 12/13/23   Page 14 of 14
USCA11 Case: 22-11826   Document: 59-1   Date Filed: 12/13/2023   Page: 14 of 14

14                    Opinion of the Court                    22-11826

1057 (11th Cir. 1996). In contrast, "a judge's rulings in the same or a related case may not serve as the basis for a recusal motion." *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990).

Here, we are unable to find that the district court abused its discretion in denying Postell's various motions for recusal given that the district court clearly articulated how Postell failed to meet the requirements of §§ 144 and 455, as detailed in its March 3, 2022, order denying all three motions for recusal. As the district court explained, Postell did not allege facts that demonstrated impartiality that rose to a level of concern as required under statute, nor did the facts demonstrate pervasive bias as required by circuit precedent. Mere disagreement with the district court's rulings and management of the case is insufficient to warrant recusal. *See Tenneco Packaging Co.*, 293 F.3d at 1329. Accordingly, we affirm the district court here as well.

### III.  Conclusion

For the foregoing reasons, we **AFFIRM** the district court's well-reasoned decisions as to all orders on appeal.

**AFFIRMED.**